**CV-10 2262**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CENTRO DE LA COMUNIDAD HISPANA DE : 
LOCUST VALLEY; and THE WORKPLACE : 10 Civ. _____
PROJECT, :
 :
                      Plaintiffs, :
 :
  -versus- :
 :
TOWN OF OYSTER BAY; and JOHN :
VENDITTO, Town Supervisor of the Town of :
Oyster Bay, :
 :
                     Defendants. :
------------------------------------------------------------X

—HURLEY, J.

LINDSAY

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

        Respectfully submitted,

        COREY STOUGHTON (CS-101)
        ARTHUR EISENBERG (AE-2012)
        ADRIANA PINON (AP-0798)
        SAMANTHA FREDRICKSON*
        New York Civil Liberties Union
        125 Broad Street, 19th Floor
        New York, NY 10004
        (212) 607-3300

        ALAN LEVINE (AL-5297)
        CHRISTINA ITURRALDE (CI-6051)
        LatinoJustice PRLDEF
        99 Hudson Street, 14th Floor
        New York, NY 10013
        (212) 219-3360

        LEE GELERNT (LG-8511)
        FARRIN ANELLO*
        American Civil Liberties Union
        125 Broad St., 17th Floor
        New York, NY 10004
        (212) 549-2500
        *Counsel for Plaintiffs*

Dated: May 18, 2010
New York, NY         *Not admitted to the Eastern District of New York

# INTRODUCTION

Plaintiffs seek a preliminary injunction and temporary restraining order to enjoin enforcement of Chapter 205-32 of the Town Code of the Town of Oyster Bay (hereinafter, "the Ordinance"), which criminalizes speech related to employment on the streets and sidewalks of the Town. Under the First Amendment, streets and sidewalks have historically been recognized as appropriate locations for communication and expression and, absent extraordinary circumstances, municipalities may not limit communication at such locations on the basis of the content of expression. Yet that is precisely with what the Town of Oyster Bay has done here. The Ordinance selects speech about employment for special burdens and limitations not imposed upon expression related to any other subject matter. It prohibits individuals from communicating, on the sidewalks of the Town, about their availability for work and it further bars general advocacy in such public spaces by individuals or organizations where such advocacy seeks to encourage employment.

Under the law, such content-based discrimination can only be sustained if narrowly tailored to serve a substantial governmental interest. Although the Town claims that its purpose in enacting the Ordinance was to promote traffic safety, the Ordinance's selective discrimination between prohibited and permitted speech on the basis of content is not actually related to that goal and is not narrowly tailored to accomplish it. As a result, the Ordinance violates the First Amendment.

The lack of an actual relationship between the Ordinance and its purported traffic-safety purpose conveys the deep sense that its true purpose is to suppress the speech of a group of predominantly Latino, immigrant day laborers whom certain members of the Oyster Bay community do not wish to welcome. For decades, day laborers have gathered peaceably on the

2

street corners of Oyster Bay looking for temporary jobs from contractors and other employers who pick them up and take them to work sites where their labor is needed. The Ordinance, which criminalizes the speech of both laborers seeking work and employers seeking labor, is depriving these individuals of their ability to exercise their First Amendment right to solicit work and obtain a living wage. In pursuit of the criminalization of the speech of these individuals, moreover, the Ordinance is so broad that it also criminalizes the speech of individuals and organizations whose advocacy is devoted to securing employment for others. At bottom, the ordinance limits labor-related expression -- and only labor-related expression -- in public spaces.

This Court will not be the first to address the constitutionality of ordinances that criminalize the solicitation of labor from streets, sidewalks and other public spaces. There is an emerging national consensus, reflected in a series of successful challenges to similar laws across the country, that such ordinances violate the First Amendment. In keeping with this consensus, this Court should affirm the First Amendment rights of day laborers to seek work, as well as the First Amendment rights of those who engage in political advocacy on their behalf, by enjoining enforcement of the Ordinance.

## STATEMENT OF FACTS

The facts relevant to this motion for preliminary injunction are not in dispute, as they derive from the text of the Ordinance itself. Chapter 205-32 of the Town Code of Oyster Bay provides as follows:

> It shall be unlawful for any person standing within or adjacent to any public right-of-way within the Town of Oyster Bay to stop or attempt to stop any motor vehicle utilizing said public right-of-way for the purpose of soliciting employment of any kind from the occupants of said motor vehicle.

Chapt. 205-32(C). "Public right-of-way" is defined as "All of the areas dedicated to public use for public street purposes and shall include roadways, parkways, highways, streets, medians, sidewalks, curbs, slopes and areas of land between the sidewalk and the curb which are also known as utility strips, except for lawful parking areas." Chapt. 205-32(B).

The true scope of the Ordinance is revealed in its definition of what it means to "solicit employment." The Ordinance explains that "solicit" or "soliciting" means:

> Any request, offer, enticement or action which announces the availability for or of employment, or a request, offer, enticement or action which seeks to offer or secure employment. Examples of behavior which constitute solicitation of employment include but are not limited to waving arms, making hand signals, shouting to someone in a vehicle, jumping up and down, waving signs soliciting employment pointed at persons in vehicles, standing in the public right-of-way while facing vehicles in the roadway. . . . A solicitation shall be deemed complete when made whether or not an employment relationship is created, a transaction is completed or an exchange of money or property takes place.

Chapt. 205-32(B). The penalty for violation of the law is a fine of not more than $250 for each offense. Chapt. 205-32(F)(1).

While it would seem both from the face of the Ordinance, as well as the public controversy that prompted its enactment, that the Ordinance was intended to prohibit day laborers who stand on sidewalks from soliciting employment from drivers of vehicles, its broad language sweeps in speech and expressive activity that extends well beyond such solicitation. For example, under the Ordinance, a person who stands on a sidewalk and does no more than face traffic has engaged in a "solicitation" that is "deemed complete", thereby committing a criminal offence. Chapt. 205-32(B). Moreover, the Ordinance makes punishable activities of general advocacy, such as labor picketing, leafleting, or other "action" that seeks to "secure employment," when that activity is directed at the occupants of vehicles. *Id.*

4

The Ordinance also contains several exclusions and omissions that further divorce its regulation of speech from its purported traffic-safety purpose. For example, although the law prohibits solicitation of employment, it does not prohibit solicitation of contributions or petition signatures. Chapt. 205-32(B). Although it prohibits waving signs related to securing employment, it does not prohibit waving signs on any other topic other than employment. *Id.* Moreover, the law, by its terms, specifically excludes solicitation of and by taxicabs, limousine services, public transportation, towing operations, and ambulances. Chapt. 205-32(E)(1) Neither the law nor can common sense can explain why a "streetside solicitation" of employment "compromises the safety of pedestrians and motorists," *see* Chapt. 205-32(A), but solicitation of campaign contributions or taxicabs does not.

Plaintiffs are two organizations who directly represent the interests of the day laborers whose speech and livelihoods are affected by the Ordinance and whose own speech about matters related to the employment of those laborers is regulated by the Ordinance.[1] Centro de la Comunidad Hispana de Locust Valley ("Centro") is a membership organization whose members are day laborers and the families of day laborers working and residing in Locust Valley, a hamlet in the Town of Oyster Bay. *See* Affidavit of Luz Torres ¶ 1. The mission of Centro is to promote the right to work with dignity, respect and justice for the Locust Valley community. In particular, Centro provides educational courses aimed at enhancing day laborers' professional and language skills and thus their ability to obtain work and operates as a gathering place for day laborers to exchange ideas and come together as a community. *Id.* ¶ 2-3.

---

[1] Plaintiffs have also alleged that the Ordinance violates the Fourteenth Amendment's equal protection clause because it was enacted specifically with intent to target the day laborers based on their race and national origin. *See* Complaint at ¶ 66 (Second Cause of Action). For purposes of this motion for preliminary injunction, however, Plaintiffs advance only their First Amendment claim.

5

The Workplace Project is a membership organization located in Hempstead, New York. *See* Affidavit of Nadia Marin ¶ 1. Its membership includes day laborers from across Long Island, including in the Town of Oyster Bay. *Id.* ¶ 3. The mission of the Workplace Project is to end the exploitation of Latino immigrant workers on Long Island and achieve socioeconomic justice for its members in the communities in which they live. *Id.* ¶ 2. One of its core projects is a day labor organizing project, through which members push for government policies that respect the rights of day laborers to seek work in peace. *Id.* ¶ 5. Thus, the Workplace Project is engaged in political advocacy that is intended to secure employment and the employment related rights of day laborers. *Id.* ¶ 6.

Members of both organizations are among the day laborers who have sought to obtain work in public places throughout the Town of Oyster Bay. Affidavit of Luz Torres ¶ 7; Affidavit of Nadia Marin ¶ 3. In addition, the organizations' own speech related to securing employment prospects for their day-laborer members is regulated by the Ordinance's restriction on speech related to employment. Affidavit of Luz Torres ¶ 4, 14; Affidavit of Nadia Marin ¶ 6-8.

## ARGUMENT

The standards governing preliminary injunction motions in the Second Circuit are well established. In order to succeed on this motion, Plaintiffs must establish (1) a substantial likelihood of success on the merits and (2) irreparable harm. *See County of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003). Plaintiffs meet both of these requirements.

## I. THE ORDINANCE IMPOSES AN UNCONSTITUTIONAL LIMITATION ON SPEECH.

"[P]ublic places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *United States v. Grace*, 461 U.S. 171, 177 (1983). In such forums, the government's right "to limit expressive activity [is] sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). It is presumptively unconstitutional for the government to regulate speech in such locations on the basis of the content of the message to be conveyed. Such content-based discrimination can only be sustained if "narrowly tailored" to the pursuit of "compelling interests." *Id.*

Anti-labor-solicitation ordinances nearly identical to Oyster Bay's have been struck down repeatedly by federal courts on the basis that they violate the First Amendment rights of people seeking work and of others that seek to engage in advocacy on streets and sidewalks. *See, e.g., Lopez v. Town of Cave Creek*, 559 F. Supp.2d 1030 (D. Ariz. 2008); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 475 F. Supp.2d 952 (C.D. Cal. 2006); *Coalition for Humane Immigrant Rights of Los Angeles (CHIRLA) v. Burke*, 2000 WL 1481467 (C.D. Cal. Sept. 12, 2000). This Ordinance is no different and should also be struck down.

The justification for enactment of Ordinance ostensibly rests upon a concern for traffic safety. Yet there is no relationship between the Ordinance's regulation of speech and the Town's professed interest in traffic safety. The Ordinance prohibits only speech about employment, leaving persons in public spaces free to wave down vehicles or direct signs at vehicles in order to communicate about any other subject. Even assuming that speech from persons in public spaces to occupants of vehicles does create a traffic concern, distinguishing between permitted and prohibited behavior in terms of the message conveyed is an irrational and unconstitutional way to

7

address that concern. Furthermore, the Ordinance's targeting of this particular speech is superfluous to traffic-safety interests in that the Town already has existing laws that are sufficient to achieve that goal, such as laws against jaywalking, obstructing traffic, illegal parking, driving at dangerously slow speeds, and soliciting in roadways. For these reasons alone, the Ordinance is unconstitutional.

Even if there did exist a legitimate government interest that was advanced by the Ordinance, however, the Ordinance is not narrowly tailored. It sweeps in far more speech than is necessary to protect traffic safety, applying to speech communicated in a manner that has no impact on traffic and in geographical places where no traffic problem could arise. Even more, the Ordinance's regulation of "action which seeks to . . . secure employment" threatens labor picketers and union pamphleteers, implicating core political speech that poses no conceivable threat to traffic safety. For these reasons, this excessive restriction on speech cannot survive constitutional scrutiny.

> A. The Town Cannot Demonstrate a Sufficient Relationship Between the Ordinance's Regulation of Speech and Its Professed Traffic Safety Goals.

Traffic safety is certainly an important interest, but there is simply no relationship between that interest and the Ordinance's bar on speech related to employment. As the Supreme Court has held, just because the Town's "asserted interests are substantial in the abstract" does not mean that a particular regulation on speech "serves them." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). To satisfy its constitutional burden, the Town is required to demonstrate that the Ordinance actually advances traffic safety. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) ("When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured.' It must demonstrate that . . . the regulation will in fact alleviate these harms

8

in a direct and material way.") (internal citations omitted). "This burden is not satisfied by mere speculation or conjecture; rather, [the Town] must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-71 (internal citation omitted); *see also Ibanez v. Florida Dept. of Bus. & Prof'l Regulation*, 512 U.S. 136,146 (1994) (holding that "rote invocation" of a state interest is not sufficient to justify regulation of speech).

On its face the Ordinance bears no direct relationship to traffic safety. First, it is directed principally at speech, not any of the behavior that might directly compromise traffic safety. Genuine concerns about traffic safety, in fact, are already addressed in local laws that forbid pedestrians from obstructing traffic, *see* Town Code of Oyster Bay, Chapt. 17-231, that forbid motorists from driving at dangerously slow speeds, *see id.* Chapt. 203-2(D), that prohibit solicitation in general, *see id.* Chapt. 173, prohibit littering, *see id.* Chapt. 201, and prohibit excessive noise. *See id.* Chapt. 156. In addition, the Town has authority to enforce New York State traffic laws, which limit pedestrian behavior when entering roadways, N.Y. VEH. & TRAF. LAW § 1152, prohibit persons from standing in roadways for the purpose of solicitation, *id.* § 1157(a), prohibit driving "at such a slow speed as to impede the normal and reasonable movement of traffic," *id.* § 1181(a), and prohibit stopping, standing or parking in restricted areas. *Id.* § 1202. The Town also has authority to enforce the state penal law, which regulates, among other things, disorderly conduct. *See* N.Y. PENAL LAW § 240.20.

The fact that existing laws are sufficient to address the Town's traffic concerns renders implausible any claim that the ordinance is about traffic safety and not about speech. In *Village of Schaumburg*, the Supreme Court held that a ban on solicitation by certain organizations was unconstitutional because such fraud could already be addressed by the penal laws and punished

directly. 444 U.S. 620, 637-38 (1980). In *Zauderer v. Office of Disciplinary Counsel*, the Court held that a blanket ban on attorney advertisements could not be justified where the state had not shown that a case-by-case enforcement of existing anti-fraud laws would not suffice for its stated purpose of regulating truth in advertising. 471 U.S. 626, 649 (1985). And in *Loper v. NYPD*, the Second Circuit struck down a statute barring loitering for the purposes of begging because it was "ludicrous" to suggest that the NYPD did not have other tools to prevent harassing and coercive conduct. 999 F.2d 699, 701 (2d Cir. 1993). The reasoning underlying those cases bears directly on the Oyster Bay Ordinance. Indeed, adopting similar reasoning, the District Court of Arizona granted a preliminary injunction to enjoin enforcement of an ordinance nearly identical to Oyster Bay's, noting that the ability to protect traffic safety through existing laws rendered the ordinance an unnecessary and unconstitutional regulation of speech. *Lopez*, 559 F. Supp.2d at 1035.

Second, the Ordinance prohibits only solicitation of work, including advocacy to "secure employment," and not speech on other topics, or even other forms of solicitation, carried out in precisely the same manner.[2] The Ordinance says nothing about the solicitation of donations, solicitation of directions to a location, or solicitation of petition signatures, even though all of these types of solicitation pose threats to traffic safety indistinguishable from those posed by solicitation of employment. Indeed, the Ordinance does not even ban all solicitation of employment, as it exempts such solicitation by taxi and limousine drivers without any

---

[2] The Ordinance's narrow focus on solicitation of employment distinguishes it from the law upheld in *Central American Refugee Center v. City of Glen Cove*, 753 F. Supp. 437 (E.D.N.Y 1990), which prohibited *all* solicitation by persons standing in certain public spaces, regardless of the subject matter of the solicitation.

explanation for why solicitation by those workers should be treated differently from solicitation by day laborers.

The fact that the Ordinance differentiates between regulated and unregulated behavior by reference to its communicative purpose makes it inherently suspect under the law. As noted, the First Amendment has long disfavored the content-based regulation of speech. *See Turner Broad. Sys.*, 512 U.S. at 642-43; *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993); *Carey v. Brown*, 447 U.S. 455 (1980); *ACLU v. City of Las Vegas*, 466 F.3d 784, 794 (9th Cir. 2006). As the Supreme Court has stated, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 818 (2000). Indeed, in *Police Dept. v. Mosley*, 408 U.S. 92, 96 (1972), the Supreme Court reviewed a challenge to a Chicago ordinance that prohibited picketing and other expressive activity within a 150 feet of any school but created an exception for "peaceful picketing of any school involved in a labor dispute." The Court concluded that the ordinance which privileged speech on the subject-matter of employment but barred speech on other subjects was a content-based measure and, as such, violated the First Amendment. In so doing, the Court observed that "[o]nce a forum is opened up to assembly or speaking by some groups, government may not prohibit others from speaking on the basis of what they intend to say." *Id.* at 96. *Accord Boos v. Barry*, 485 U.S. 312 (1988) (holding that an ordinance that selectively barred speech near embassies that was critical of foreign governments was content-based and violative of the First Amendment). If, as in *Mosely*, it was impermissible to privilege speech about employment or labor activity, then it is similarly impermissible to disfavor such speech. In both instances, municipalities have engaged in content-based discrimination impermissible under the First Amendment.

11

In sum, by banning only solicitation of employment and other speech related to employment (and, in fact, not even all speech related to employment), the Town of Oyster Bay has imposed a blanket prohibition on speech that is wholly unrelated to its purported concern with traffic safety. The rational response to traffic concerns is to enforce existing traffic laws, not to enact a prohibition on speech related to a particular subject matter. As the Supreme Court noted in *Turner Broadcasting*, this Court has an "obligation to exercise independent judgment" when reviewing the government's justification for a regulation on speech. *Id.* at 666. The Town cannot explain how the Ordinance's speech-based approach actually advances its professed interest in regulating behavior that threatens traffic safety. On this ground alone, therefore, the Ordinance cannot be justified as a legitimate regulation of speech and Plaintiffs are substantially likely to succeed on the merits of their First Amendment claim.

B. The Town Cannot Demonstrate That the Ordinance Is Narrowly Tailored to Accomplish Its Traffic Safety Goals and that There Is Not a Less Drastic Alternative to Meet Those Goals.

As argued above, the lack of a relationship between the Ordinance and the Town's purported traffic-safety interest provides sufficient independent grounds to find the Ordinance unconstitutional. But even if it could be shown that the Ordinance actually advanced the Town's professed interests, it violates the First Amendment "because it [is] not narrowly tailored to serve a compelling governmental interest and because less restrictive alternatives were available." *Ashcroft v. ACLU*, 542 U.S. 656, 661 (2004)

A restriction on speech is not narrowly drawn if it is "broader than reasonably necessary to prevent the perceived evil." *Peel v. Attorney Registration & Disciplinary Comm'n*, 496 U.S. 91, 107 (1990); *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (holding that regulation of speech is only narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it

12

seeks to remedy") (citation omitted); *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (holding that government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."). Prophylactic rules that regulate more speech or expressive activity than is necessary to address the state's concerns – as this does, since not every person who speaks about employment in public spaces poses an actual threat to traffic safety – are constitutionally unacceptable.

Courts confronting similar anti-immigrant ordinances banning labor solicitation have found this aspect of these ordinances fatal. In *Redondo Beach*, for example, the Central District of California struck down one such ordinance, noting its overbroad application "to individuals who stand on the *sidewalk*" as well as those "standing well away from the flow of traffic who merely hold up a sign inviting the occupants of vehicles to drive to a private location to confer." 475 F. Supp. 2d at 965 (emphasis in original). In *CHIRLA*, the same court noted that the ordinance at issue there – like Oyster Bay's – "reache[d] even a solicitor who stands on the sidewalk, away from the curb, and unobtrusively attempts to make known to the occupants of vehicles his availability for work." 2000 WL 1481467 at *6.

Similarly, in *Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009), the Ninth Circuit struck down a permitting scheme for street performers in Seattle parks that was enacted in response to complaints about crowd safety because, "by the City's own account, most street performers are not problematic. So the permitting requirement burdens all performers to root out the occasional bad apple. By doing so, it fails to 'target[] and eliminate[] no more than the exact source of the "evil" it seeks to remedy.'" 569 F.3d at 1045-46 (quoting *Frisby*, 487 U.S. at 485); *see also ACLU v. City of Las Vegas*, 466 F.3d at 796 n.13 (holding that a ban on solicitation in

downtown Las Vegas was not narrowly tailored because it barred more than just solicitation that posed a threat to pedestrian safety).

The Southern District of New York issued a preliminary injunction against enforcement of a prohibition on solicitation of passersby on New York City streets in a case indistinguishable from this one, holding that the regulation was "more extensive than is necessary to serve the asserted government interest" because it banned all such solicitation rather than only combating harassing solicitors or those who block the sidewalks. *HX Magazine v. City of N.Y.*, 2002 WL 31059318 (S.D.N.Y. 2002).

The principle underlying these cases has its origin in the Supreme Court's holding more than seven decades ago in *Schneider v. New Jersey*, 308 U.S. 147 (1939). In *Schneider*, various municipalities defended ordinances that prohibited leafleting on the ground that leafleting had resulted in excessive littering. While the Court recognized that the prohibition on leafleting would serve to reduce litter, the Court held that "the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it." *Id.* at 162. The Court confirmed that the First Amendment protection afforded leafleting did not leave the state without power to deal with the related problem of littering: "There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets." *Id.*

And so here. It is not the class of all day laborers on the sidewalks of Oyster Bay who are causing traffic problems any more than it was all the leafletters in the towns of New Jersey who were doing the littering, or all the street performers in Seattle who were threatening crowds in the parks, or all the peaceful solicitors blocking the sidewalks in New York City. Like the

14

regulations in those cases, Oyster Bay's Ordinance is not limited to conduct that actually creates traffic concerns, nor is it confined those areas in which traffic problems have arisen or are likely to arise. The Town of Oyster Bay is free to punish those drivers of vehicles who actually cause traffic safety problems, and, as previously noted, already has ample tools to do so.

In sum, like the municipalities of Los Angeles, Cave Creek and Redondo Beach before it, the Town of Oyster Bay cannot meet its burden of demonstrating that the Ordinance is narrowly tailored to its stated interest in traffic safety and that there is not a less restrictive alternative for meeting that interest. For this reason, the Court should find that Plaintiffs are substantially likely to succeed on the merits.

## II.   PLAINTIFFS HAVE SHOWN IRREPARABLE HARM.

With respect to irreparable harm, the Second Circuit has explained, "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Bronx Household*, 331 F.3d at 349 (discussing cases); see also *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). That is the situation here, where the speech of the day laborers that Plaintiffs represent, as well as the speech of the organizations themselves, is directly limited by the Ordinance's criminalization of the solicitation of work and of speech related to the securing of employment.

Beyond the infringement of their free speech rights, the day laborers who are members of the plaintiff organizations have suffered grave economic harm. Without the ability to seek work freely in the Town of Oyster Bay, these residents cannot make a living. And the Ordinance severely impedes the ability of these individuals to support themselves. *See* Affidavit of Luz Torrez ¶¶ 8, 9.

15

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining enforcement of Chapter 205-32 of the Town Code of the Town of Oyster Bay.

Respectfully submitted,

*/s/ Corey Stoughton*

COREY STOUGHTON (CS-101)
ARTHUR EISENBERG (AE-2012)
ADRIANA PINON (AP-0798)
SAMANTHA FREDRICKSON*
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

ALAN LEVINE (AL-5297)
CHRISTINA ITURRALDE (CI-6051)
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013
(212) 219-3360

LEE GELERNT (LG-8511)
FARRIN ANELLO*
American Civil Liberties Union
125 Broad St., 17th Floor
New York, NY 10004
(212) 549-2500

Dated: May 18, 2010
New York, NY

*Counsel for Plaintiffs*
*Not admitted to the Eastern District of New York

*On the Motion:*
Melissa Berger
Emily Garber
Katherine Greenberg
Meheret Kassa
Law Students, New York University School of Law
New York Civil Liberties Clinic

16