UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CENTRO DE LA COMUNIDAD HISPANA DE
LOCUST VALLEY and THE WORKPLACE
PROJECT,

                                Plaintiffs,                      **MEMORANDUM AND ORDER**
                                                     10 CV 2262 (DRH) (ARL)

        - against -

TOWN OF OYSTER BAY; JOHN VENDITTO,
Town Supervisor of the Town of Oyster Bay,

                                Defendants.
-----------------------------------------------------------------X
**APPEARANCES:**

**LATINO JUSTICE PRLDEF**
Attorneys for Plaintiffs
99 Hudson Street, 14th Floor
New York, NY 10013
BY:    Alan Levine, Esq.
        Elizabeth Joynes, Esq.
        Laura Huizar, Esq.

**NEW YORK CIVIL LIBERTIES UNION**
Attorneys for Plaintiffs
125 Broad Street, 19th Floor
New York, NY 10004
BY:    Corey Stoughton, Esq.
        Art Eisenberg, Esq.
        Erin B. Harrist, Esq.

**AMERICAN CIVIL LIBERTIES UNION**
Attorneys for Plaintiffs
125 Broad Street, 17th Floor
New York, NY 10004
BY:    Lee Gelernt, Esq.


**SINREICH KOSAKOFF & MESSINA LLP**
Attorneys for Defendants
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
BY:    Jonathan Halsby Sinnreich, Esq.
        Timothy F. Hill, Esq.

**GOLDBERG SEGALLA LLP**
Attorney For Defendant Town of Oyster Bay
200 Old Country Road, Suite 210
Mineola, NY 11501
BY: Christopher Kendric, Esq.


**HURLEY, Senior District Judge:**


On May 17, 2010, plaintiffs Centro de la Comunidad Hispana de Locust Valley

("Centro") and The Workplace Project, two organizations that advocate on behalf of immigrant

workers and day laborers commenced this action alleging that the Town of Oyster Bay ("The

Town") and its Town Supervisor John Venditto violated their free speech, due process, and equal

protection rights through adoption of a town ordinance ("the Ordinance") prohibiting day laborers

from stopping or attempting to stop vehicles to solicit work. Plaintiff Centro is an unincorporated

membership organization primarily consisting of day laborers and their families who live and

work in the Town of Oyster Bay, particularly Locust Valley, while The Workplace Project is an

incorporated membership organization made up of Latino immigrant workers who live in Nassau

County.

On September 29, 2011, plaintiffs filed an Amended Complaint, the operative pleading in

this action, bringing the following claims: (1) violation of the First Amendment, as incorporated

by the Fourteenth Amendment of the U.S. Constitution and secured by 42 U.S.C. § 1983; (2) the

ordinance is unconstitutionally vague in violation of the First Amendment, as incorporated by the

Fourteenth Amendment of the U.S. Constitution and secured by 42 U.S.C. § 1983; (3) violation of

equal protection under the Fourteenth Amendment of the U.S. Constitution and secured by 42

U.S.C. § 1983; (4) the ordinance is unconstitutionally vague in violation of the due process clause

of the Fourteenth Amendment of the U.S. Constitution and secured by 42 U.S.C. § 1983.

On May 20, 2010, the Court issued a temporary restraining order ("TRO") enjoining enforcement of the Ordinance. Upon consent of the parties, the Court converted the TRO into a Preliminary Injunction on June 1, 2010. Thereafter, the defendants appealed the preliminary injunction to the Second Circuit, and the Second Circuit affirmed this Court's decision but emphasized that this Court retained the power to reconsider the preliminary injunction or to leave it in place. After receiving the Second Circuit's ruling, however, the parties agreed to leave the preliminary injunction in place and proceed to trial.

Presently before the Court are two motions and one appeal. First, defendants move pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment dismissing the claims of plaintiff Centro on the grounds that Centro lacks standing. Second, plaintiffs move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss defendants' counterclaims for lack of subject matter jurisdiction. Third, defendants ask that this Court overrule Magistrate Judge Lindsay's decision to issue a protective order regarding defendants' discovery requests. For the reasons set forth below, defendants' motion for partial summary judgment is denied, plaintiffs' motion to dismiss is granted, and Judge Lindsay's decision to issue a protective order is affirmed.

### BACKGROUND[1]

The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions.

Plaintiff Centro is an unincorporated organization formed on March 22, 2010. (Defs.' 56.1 Stmt. ¶¶ 1, 2). Centro was formed to ensure the right to dignified work and the right to work

---

[1] While the facts presented in this Section are for purposes of the defendants' motion for summary judgment, there is a great deal of overlap with those facts relevant to the other motions at issue here. To the extent that additional facts are relied on in connection with these other motions, those facts will be addressed *infra*.

with respect and justice as well as in response to the Town's intention to adopt the Ordinance. (Pls.' 56.1 Stmt. ¶ 18). In furtherance of this mission, Centro runs educational programs for day laborers including ESL (English as a Second Language) classes, safety seminars, and labor rights workshops, and its members also visit sites in Locust Valley where day laborers solicit employment in order to discuss any problems the day laborers might be having and provide laborers with information and available resources. (*Id.* ¶¶ 27-28). Luz Torres is the Chairperson of Centro and participates in these initiatives. (Decl. Of Alan Levine in Supp. Of Pls.' Mem. in Opp'n to Summ. J., Ex. B, Decl. of Luz Torres ¶¶ 1, 6 ("Torres Decl. I")).

Centro includes as members of its organization anyone that ever attended a meeting subsequent to its formation and does not require any application or other criteria for membership. (Defs.' 56.1 Stmt. ¶ 4). Centro does not maintain any bank accounts and does not receive any funding. (*Id.* ¶ 6). Centro does, however, hold bimonthly general membership meetings and retains notes and attendance records from these meetings (Torres Decl. I ¶¶ 4, 8). Centro's members also elect a Steering Committee that meets monthly to discuss activities, plan general meetings, and make executive decisions. (*Id.* ¶ 3). At Centro's first meeting on March 22, 2010 more than forty people attended and voted on the organization's name, elected a steering committee, and drafted Centro's mission statement. (Pls.' 56.1 Stmt. ¶¶ 4, 5)

The Town Board enacted the Ordinance, Chapter 205-32 of the Code of the Town of Oyster Bay, on September 29, 2009. The Ordinance provides as follows:

> It shall be unlawful for any person standing within or adjacent to any public right-of-way within the Town of Oyster Bay to stop or attempt to stop any motor vehicle utilizing said public right-of-way for the purpose of soliciting employment of any kind from the occupants of said motor vehicle.

Chapt. 205-32(C).

"Public right-of-way" is defined as "[a]ll of the areas dedicated to public use for public street purposes and shall include roadways, parkways, highways, streets, medians, sidewalks, curbs, slopes and areas of land between the sidewalk and the curb which are also known as utility strips, except for lawful public parking areas."  Chapt. 205-32(B).  According to the Ordinance, "solicit" or "solicitation" means:

> Any request, offer, enticement, or action which announces the availability for or of employment, or a request, offer, enticement or action which seeks to offer or secure employment.  Examples of behavior which constitute solicitation of employment include but are not limited to waving arms, making hand signals, shouting to someone in a vehicle, jumping up and down, waving signs soliciting employment pointed at persons in vehicles, standing in the public right-of-way while facing vehicles in the roadway, or entering the roadway portion of the public right-of-way for purpose of seeking employment.  A solicitation shall be deemed complete when made whether or not an employment relationship is created, a transaction is completed or an exchange of money or property takes place.

Chapt. 205-32(F)(1).

The Ordinance specifically excludes solicitation of taxicabs, limousine services, public transportation, towing operations, and ambulances.  Chapt. 205-32(E)(1).  The penalty for violation of the law is a fine of not more than $250 for each offense.  Chapt. 205-32(F).

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material;

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will

bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.      *Standing*

In order to satisfy the case or controversy requirement of Article III of the Constitution, a plaintiff must establish standing. *See* U.S. CONST. art. III, § 2, cl. 1. Standing requires a plaintiff to "allege personal injury traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). In addition, the injury must be concrete and particularized, not merely conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The standing requirement limits the power of the judiciary to hear only cases where real injuries are likely to be redressed by the court's relief, that is, cases where the party has alleged a personal stake in the outcome of the controversy to ensure that the dispute will be presented in an adversary context "in a form historically viewed as capable of judicial resolution." *See id.* at 559-60; *Flast v. Cohen*, 392 U.S. 83, 101, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968).

An organization can obtain standing in two ways. First, an organization may "have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.

Ct. 2190, 45 L. Ed. 2d 343 (1975). Under this theory, "the organization is just another person - albeit a legal person - seeking to vindicate a right." *N. Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294-95 (2d Cir. 2012) (finding that the organization had standing to "vindicate its own rights as an organization with goals and projects of its own"). As a result, "[l]ike the individual plaintiff, an organization must show actual or threatened injury in fact that is 'fairly traceable to the alleged action and likely to be redressed by a favorable court decision.'" *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (internal citation omitted). Second, an organization may sue on behalf of its members by demonstrating that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action." *Warth*, 422 U.S. at 511.

The defendants argue that Centro does not have standing in either of these two ways, particularly because it has not suffered any injury as a result of the Ordinance. (Mem. in Supp. of Summ. J. at 2, 3). As a result, the defendants claim that there is no genuine dispute as to any material fact and that they are therefore entitled to judgment as a matter of law. Centro, however, claims that it has organizational standing to bring this suit, and this Court agrees.

### A. *Centro Has Organizational Standing*

The Court concludes that Centro has standing to bring this action in its own right to seek judicial relief because the Town's Ordinance imposes a threat of injury to Centro's organizational activities and goals. The Second Circuit has recognized that when analyzing whether an organization has standing to sue in its own right "only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'" *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011) (quoting *Ragin*, 6 F.3d at 905 (2d Cir. 1993) (citing *Havens Realty Corp.*

*v. Coleman*, 455 U.S. 363, 379, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982))).[2]  In addition, in *New York Civil Liberties Union v. New York City Transit Authority*, the Second Circuit recognized that an organization had standing to sue in its own right as an organization with "goals and projects of its own."  684 F.3d at 295 (finding that NYCLU had a "cognizable interest" in open access to hearings before the Transit Authority "as a matter of professional responsibility to clients" and that denying the NYCLU access to these hearings had "impeded, and will continue to impede, the organization's ability to carry out this aforementioned responsibility").

Centro has established the "perceptible impairment" to its activities required to constitute standing in its own right.  Centro's goals and projects include meeting with day laborers at the street corners where they gather in order to provide "educational outreach, counsel day laborers about their right to solicit employment, and provide them with information about available resources."  (Torres Decl. I ¶ 6).  Further, it is clear from Ms. Torres's declaration that the language of the Ordinance prohibiting solicitation through "standing in the public right-of-way while facing vehicles in the roadway" has caused members of Centro to be concerned that they "could be penalized for engaging in advocacy activities at the corners and speaking with the day laborers at the corners about workers' rights."  (*Id*. ¶ 12; Decl. Of Timothy F. Hill, Ex. C, Dep. of Luz. Torres at 269 ("Torres Dep.")).  Ms. Torres has felt "comfortable continuing to counsel and communicate with day laborer members of Centro at the street corners [only] because the Ordinance has been enjoined."  (Torres. Decl. ¶ 11).  Ms. Torres's concerns seem to be validated by the testimony of Frank Cardone, the Town Public Safety Officer most regularly assigned to

---

[2]  The Court recognizes that this proposition originated in cases where plaintiff organizations challenged violations of the Fair Housing Act, and the challenged action caused plaintiff organizations to divert resources from other activities to respond to the alleged violations.  *See e.g., Ragin*, 6 F.3d at 905.  In *New York Civil Liberties Union v. New York City Transit Authority*, however, the Second Circuit, cites the proposition in laying out the general test for the injury in fact required for an organization to achieve standing in its own right, and the Court applies that standard here.  684 F.3d 286, 294 (2d Cir. 2012).

monitor the day laborers. As Mr. Cardone admits, it is difficult to distinguish someone standing on the sidewalk soliciting employment from someone gathered to provide information to day laborers. (Decl. Of Alan Levine in Supp. of Pls.' Mem. in Opp'n To Summ. J., Ex. K, Dep. of Frank Cardone ("Cardone Dep.") at 137). On the basis of this testimony, it is perceptible that were the Ordinance not enjoined it would prevent Centro from engaging in its street corner counseling, thereby impairing its advocacy activities.

Furthermore, this impairment is to a "cognizable interest," as the counseling that Centro provides to day laborers gathered on the public sidewalks is an integral part of its stated mission "to promote day laborers' right to work with dignity, respect, and justice." (Torres Decl. I ¶ 2, 6). In recognizing this interest, the Court joins with the Ninth Circuit in *Comite de Jornaleros de Redondo Beach v. Redondo Beach*. There the court found that plaintiff organizations who faced a similar anti-solicitation ordinance to that which plaintiffs face here had standing in their own right. 657 F.3d 936, 943 (9th Cir. 2011). In *Redondo*, plaintiffs, a pair of day laborer organizations, challenged a Redondo Beach anti-solicitation ordinance that barred individuals from standing on the street or highway and soliciting employment. *Id.* at 940. The court found it crucial to its analysis that the ordinance frustrated the organizations' mission to strengthen and expand the work of day laborer organizing groups by "discourag[ing] both employees and employers from participating in hiring transactions." *Id.* at 943. Like the ordinance in *Redondo*, enforcement of the Town of Oyster Bay's Ordinance frustrates Centro's mission to "promote day laborers' right to work with dignity, respect and justice." (Torres Decl. I ¶ 2). Here, that mission is frustrated because the Ordinance both discourages members from providing day laborers assistance at street corners as well as discourages day laborers, including members of Centro,

"from bothering[ing] to solicit work in the streets of Locust Valley or anywhere else in Oyster Bay. (Torres Dep. at 270).

Finally, Ms. Torres's statement in her deposition that the Town has not interfered with Centro's activities since the enactment of the Ordinance does not preclude standing. (*Id.* at 243, 276). As plaintiff correctly notes, the Town could not have interfered with Centro's activities once the Ordinance was enjoined on May 20, 2010, a mere two months after Centro's formation. Moreover, as already discussed above, Centro has presented sufficient evidence demonstrating that the Ordinance poses a "threatened injury in fact" to its advocacy efforts. *Ragin*, 6 F.3d at 904.

### B.    *Representational Standing*

Both the defendants and Centro concur that this court is bound by precedent set in *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) and recently upheld in this circuit prohibiting plaintiffs from bringing § 1983 claims based on representational standing. *See Nnebe*, 644 F.3d at 156; *Kryas Joel Alliance v. Vil. of Kiryas Joel*, 495 F. App'x 183, 189 (2d Cir. 2012). Still, the Court need not even reach this question because as set out above Centro has achieved organizational standing in its own right.

### C.    *Legal Capacity*

Defendants' argument that Centro lacks legal capacity to sue is unconvincing. Legal capacity is governed by Federal Rule of Civil Procedure 17(b). According to Rule 17(b)(3), an organization's capacity to sue is governed by the law of the state in which the action is brought, except that "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under

the United States Constitution or laws." Here, regardless of state law, Centro, an unincorporated association, has legal capacity to bring suit because all of its claims allege violations of the United States Constitution.

Further, Centro is more than a mere "phantom of an organization" as defendants claim (Defs.' Mem. in Supp. of Summ. J. at 7). It is clear from the record that even though Centro does not have formal membership policies, it is still comprised of individuals present at its bimonthly meetings. (Torres Decl I ¶ 4). In addition, Centro keeps record of these members, including names and addresses, and some of these members even participate in Centro's elected steering committee. (*Id.* ¶ 3; Torres Dep. at 150). Centro does not deny that it was formed in part in response to the Ordinance at issue, but that fact does not diminish its status as an organization.

### D. Conclusion

The defendants have failed to establish that plaintiff Centro lacks standing to bring this suit. Accordingly, their motion for summary judgment is denied.

### III. Motion to Dismiss Defendants' Counterclaims

On October 19, 2011, the defendants issued their answer to the plaintiffs' amended complaint. The defendants' answer sought declaratory judgment on the following four counterclaims: (1) The Ordinance is a lawful time, place, or manner restriction and does not violate the First Amendment to the United States Constitution; (2) The speech in question constitutes unlawful speech that is not entitled to any constitutional protection, and therefore the Ordinance does not violate the First Amendment; (3) The speech in question constitutes commercial speech, but the Ordinance advances a substantial government interest, and

accordingly does not violate the First Amendment; (4) The Ordinance is not unconstitutionally vague and does not violate the First or Fourteenth Amendments.

The defendants' answer also raised the following four affirmative defenses: (1) The Ordinance constitutes a reasonable time, place, and manner restriction; (2) Any speech abridged by the Ordinance constitutes commercial speech related to illegal conduct and is not entitled to Constitutional Protection; (3) The Ordinance constitutes lawful restriction of commercial speech.

## A.    Standard

"The plaintiffs move to dismiss the defendants' counterclaims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because they claim that the court in its discretion should not address these claims under the Declaratory Judgment Act, 28 U.S.C. § 2201." (Pls.' Mem. in Supp. of Mot. to Dismiss at 12). Upon consideration of a motion to dismiss for lack of subject matter jurisdiction, it is the claimant who bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

## B.    The Declaratory Judgment Act

The Declaratory Judgment Act states that "in a case of actual controversy within its jurisdiction...any court...*may* declare the rights and other legal relations of any interested party." 28. U.S.C. § 2201 (emphasis added). The act "confers federal courts with the discretion to exercise or decline subject-matter jurisdiction" over a party's request for a declaration of its rights. *Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823, at *2 (S.D.N.Y. Nov. 24, 2008). According to the Supreme Court, this discretion is "unique and substantial." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). In fact, the Second Circuit has found that "[c]ourts have consistently interpreted this permissive language as

a broad grant of discretion to district courts to refuse to exercise judgment over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir. 2003). The Second Circuit has also held that a relevant consideration in determining whether to exercise judgment is "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 411 F.3d 384, 389 (2d Cir. 2005); *Peconic Baykeeper, Inc. v. Suffolk County,* 600 F.3d 180, 187 (2d Cir. 2010).

### C.  *Defendants' Counterclaims Should Be Dismissed*

Courts have held that "when a counterclaim is merely the 'mirror image' of an opposing party's claim and the counterclaim serves no independent purpose, the counterclaim may be dismissed." *Worldwide Home Products, Inc. v. Bed Bath and Beyond, Inc.*, 2013 WL 247839, *2 (S.D.N.Y. Jan. 22, 2013); *see Arista Records*, 2008 WL 4974823, at *3. "In determining whether a counterclaim is merely a mirror image of a claim, the court must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim." *Worldwide Home Products*, 2013 WL 247839, at *2. The court may dismiss a defendant's counterclaim where it is merely a repackaging of its defenses and mirrors the plaintiff's claims. *See id.* at *3.

The Court finds that the declaratory relief requested by the defendants would not serve a useful purpose for the following reasons. First, the defendants' first three counterclaims are nothing more than its first three affirmative defenses repackaged, and all four counterclaims are mirror images of the plaintiffs' claims. If the Court were to dismiss the plaintiffs' constitutional claims, no case or controversy would remain that could be addressed by the plaintiffs. The

14

plaintiffs cannot provide any redress to the Town who is simply a municipality seeking a declaratory judgment that the Ordinance is constitutional.

Second, the Court finds unconvincing the defendants argument that the overlapping issues raised in plaintiffs' claims and defendants' counterclaims will not be reached if the plaintiffs' claims are dismissed on other grounds, in particular for lack of standing. (Defs.' Mem. in Opp'n to Mot. to Dismiss at 5-6)  As discussed in Section II above, the plaintiffs' claims survive the challenge to standing that the defendants raised, rendering this argument moot.

Finally, the Court does not find helpful defendants' suggestion that the Court determine this motion at the time of trial, nor does it find persuasive the defendants' point that inclusion of the counterclaims will not prejudice the plaintiffs.  (Defs' Mem. in Opp'n to Mot. to Dismiss at 7-8).  At this time, the Court does not see any benefit to delaying its ruling until a later date. Moreover, the fact that defendants' counterclaims would not prejudice the plaintiff is no justification for allowing them when they do not serve a useful purpose.

Given the Court's broad discretion to refuse to exercise judgment over declaratory actions, and for the reasons enumerated above, the defendants' counterclaims are hereby dismissed with prejudice.

### IV.  _Appeal of Magistrate Decision to Grant Plaintiffs a Protective Order_

On October 12, 2011, the defendants served the plaintiffs with various discovery demands now at issue.  These demands requested information from the plaintiffs regarding the identities of the specific members of the plaintiff organizations as well as day laborers known to them.[3]  The

---

[3] Specifically, the plaintiffs sought a protective order entitling them to withhold documents and make redactions to documents responsive to Document Requests 3-7, 10, 19, 22, 23, 29, and 33-37 and Interrogatories 1-3, 5, and 7-12.  (Aff. of Timothy Hill, Ex. 2, Appx. to Pls.' Mot. for Protective Order). Each of these categories requests specific identifying information, for example, names and addresses, of the members of Centro, the Workplace

plaintiffs objected to these demands claiming that their interest in privacy outweighed the defendants' need for or interest in the requested information. (Aff. of Timothy Hill, Ex. 2). Magistrate Judge Lindsay issued a protective order prohibiting discovery into the identities of the members and individual day laborers known to the plaintiff organizations. This Court affirms Magistrate Judge Lindsay's order.

### A. Standard of Review

This Court reviews Magistrate Judge's decisions regarding non-dispositive pretrial matters under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). Discovery matters generally are considered non-dispositive of litigation. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

An order is "clearly erroneous" only if a reviewing court, considering the entirety of the evidence, " is left with the definite and firm conviction that a mistake has been committed"; an order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Equal Employment Opportunity Comm. v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001)). This standard is "highly deferential," "imposes a heavy burden on the objecting party," and "only permits reversal where the magistrate judge abused his discretion." *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002).

### B. Protective Order

The Supreme Court has held that compelled disclosure of affiliation with groups engaged in advocacy may constitute a restraint on freedom of association. *See NAACP v. Alabama*, 357 U.S. 449, 460, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). *New York State National Organization*

---

Project, or day laborers known to plaintiffs generally in Oyster Bay.

*for Women v. Terry* states that in considering whether to compel disclosure, the relevant inquiry is whether the party seeking to limit disclosure has made a *prima facie* showing that articulates "some resulting encroachment on their liberties," shifting the burden to the other side "to demonstrate the necessary compelling interest in having discovery." 886 F.2d 1339, 1355 (2d. Cir. 1989). It is important for courts to be "mindful of the crucial place speech and associational rights occupy under our constitution," and that "in making out a *prima facie* case of harm the burden is light." *Id.*; *Schiller v. The City of N. Y.*, 2006 WL 3592547, *6 (S.D.N.Y. Dec. 7, 2006). ("As noted above, organizations resisting discovery on freedom of association grounds bear a minimal burden of proof."). When evaluating infringement of First Amendment rights, "[g]iven the great importance of these rights, it is preferable to weigh whatever claims of chilling effect are made against the need for disclosure." *Snedigar v. Hodderson*, 786 P.2d 781, 785 (Wash. 1990). In doing so, the court is also to consider common sense. *See Local 1814, Int'l Long-Shoremen's Assoc., AFL-CIO v. Waterfront Comm. of N. Y. Harbor*, 667 F.2d 267, 271 (2d Cir. 1981).

While in some cases plaintiffs have met their burden by showing evidence of actual past harm, the Second Circuit has found that "a factual record of past harassment is not the only situation in which courts have upheld a First Amendment right." *Id.* at 271. In fact, "the evidence offered need show only a reasonable probability that the compelled disclosure" will lead to "threats, harassment, or reprisals." *Buckley v. Valeo*, 424 U.S. 1, 74, 98 S. Ct. 612, 46 L. Ed. 2d 659 (1976). For example, the concern that some of those considering whether to join or contribute to an organization "would be discouraged from doing so out of fear of retaliation" is "a

likely infringement on First Amendment rights." *United States v. Citizens State Bank*, 612 F.2d 1091, 1093 (8th Cir. 1980); *see also Terry*, 886 F.2d at 1355.

Magistrate Judge Lindsay found that even though the plaintiffs did not make out a *prima facie* showing of harm, they were entitled to a protective order because the defendants could not show any need for the discovery. The Court finds that Magistrate Judge Lindsay reached the proper conclusion, although I disagree with her conclusion as to the harm required to establish a *prima facie* case under *Terry*. The Court finds that the plaintiffs did meet their light burden in making out a *prima facie* case, thereby shifting the burden to the defendants to show a compelling need for the discovery. The Court agrees with Judge Lindsay that the defendants did not meet this burden.

The Court finds that here the plaintiffs met the light burden required in making out a *prima facie* case that disclosure of the names of members and day laborers known to them would infringe upon the plaintiffs' associational rights. Ms. Torres explains that some of Centro's work "involves challenging the actions and decisions of the Town" and is "controversial and unpopular with local residents and governments." (Aff. Of Timothy Hill, Ex. 2, Pls.' Mot. for Protective Order, Decl. Of Luz Torres ¶¶ 6-7 ("Torres Decl. II")). She is afraid that revealing the identities of the members and people associated with Centro would open the members up to harassment by the Town and other members of the community, chill open communication between the members, and deter people from becoming or remaining members. (*Id.* ¶¶ 10-12). Similarly, Angel Perez, the Executive Director of the Workplace Project, states that disclosing the identities of the Workplace Project would result in an "irreparable violation of trust" that has been built between members and people that interact with the Workplace Project as well as destroy the organization's

sought after "safe space" where members can share experiences without retaliation.[4] (Aff. Of

Timothy Hill, Ex. 2, Pls.' Mot. for Protective Order, Decl. of Angel Perez ¶¶ 1, 14-17 ("Perez

Decl. ")). These declarations constitute a *prima facie* case because they demonstrate a likelihood

that people would be deterred from remaining in or joining the plaintiff organizations out of a fear

of retaliation, and as a result inhibit plaintiffs' right to associate. *See Citizens*, 612 F.2d at 1093.

Further, the evidence in the record demonstrating that the Town has shown hostility

toward day laborers and Latino immigrants gives rise to a reasonable probability that the

disclosure in question would subject Centro, who advocates on behalf of Latino day laborers, to

threats, harassment, or reprisals. Mr. Perez discusses the general anti-Latino sentiment that day

laborers face, explaining, "I am personally aware of and have witnessed extreme, public anti-

Latino sentiment by both residents as well as local and state government officials on Long

Island." (Perez Decl. ¶ 11). As Ms. Torres explains, this sentiment reaches the day laborers,

including members of Centro, who "have long complained to me about harassment and

intimidation by neighbors, government officials, and law enforcement officers." (Torres Decl. II

¶ 5). In addition, they "have been viewed with suspicion and hostility by the Town government"

such that "disclosure of members' names is likely to subject them to adverse social, political and

economic consequences." (*Id.* ¶ 15.). Mr. Perez echoes the same concerns. (Perez Decl. ¶ 10

("Many of the day laborers who we work with are afraid to speak out in public about the

harassment and threats they have encountered because they fear retaliation from law enforcement

and other government officials.")). In addition, articles surrounding debate over the Ordinance

suggest that residents of Oyster Bay do not look fondly on the day laborers. (Aff. of Timothy

---

[4] Even though the defendants challenge standing only as to Centro, the Protective Order
issued by Judge Lindsay related to discovery sought from both Centro and the Workplace
Project. Thus, both plaintiffs must meet the *prima facie* burden described in *Terry*.

Hill, Ex. 2, Pls.' Mot. for Protective Order, Ex. C). As a result, both the law and common sense demonstrate that the plaintiffs have made a *prima facie* showing that there is a reasonable probability that compelled disclosure would lead to threats or harassment.

Having made a *prima facie* showing, the burden now shifts to the defendants to show a compelling need for the discovery. Here, the Court agrees with Judge Lindsay's opinion that the defendants have shown no such need. In seeking to overturn that order, defendants frame the issue thusly:

> The sole issue presented for determination is whether the Town is entitled to discovery of the personal identifying information of the members of the plaintiff organizations and other day laborers known to them who have solicited employment on the streets of the Town, so that the testimony of these essential witnesses can be procured in support of the Town's defense[s] of this action.

(Defs.' Mem. in Obj. to J. Lindsay's Order at 1 ("Defs,' Mem. in Obj.")).

The defenses referenced in the preceding quote are identified as "a) the commercial speech at issue in this case is not entitled to any First Amendment protection because it is intrinsically related to the unlawful conduct of the day laborers themselves, and b) that the Ordinance is narrowly tailored to address the real world dangerous conditions created by the personal conduct of the day laborers as they congregate on the streets and sidewalks of the Town."[5] (Defs,' Mem. in Obj. at 2-3).

With respect to the defense predicated on the purported "unlawful conduct of the day laborers themselves," that subject was discussed briefly at the time the temporary restraining

---

[5] Parenthetically the Ordinance's reach is not limited to those who "congregate on the streets and sidewalks of the Town," Defs.' Mem. in Obj. at 2, but, under the terms of the Ordinance, extends to any individuals seeking employment positioned on property "adjacent to" the Town's streets and sidewalks. *See* Chapter 205-32(c) of the Code of the Town of Oyster Bay (describing prohibited conduct) and Chapter 205-32(b) (defining the term "Public right-of-way").

order was issued, as was the Supreme Court decision in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). In *Central Hudson*, the Supreme Court explained that the "government may ban forms of commercial speech...related to illegal activity." *Id.* at 563-64. However, even though it is undisputed that "this Court's preliminary TRO rulings have not foreclosed the Town's illegality defense," Defs.' Mem. in Obj. at 22, the subject needs to be readdressed at this juncture given (a) that the instant appeal focuses on Judge Lindsay's reference to those rulings, and (b) the identity of the day laborers is said by defendants to be critical to their illegality defense. The critical issue then, in reviewing the challenged protective order vis-a-vis the illegality defense, is whether the solicitations banned by the Oyster Bay Ordinance constitute speech "relative to illegal activity" as the term is used in *Central Hudson* as defendants maintain. If so, the discovery sought would be germane and the challenged order contrary to law. However, neither is the case.

Defendants furnished a transcript of the oral argument before the Second Circuit concerning this Court's issuance of the preliminary injunction as part of their present motion papers. During the appellate argument, defendants posited that "the situation in *Pittsburgh Press [Company v. the Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973)], is really conceptually very analogous" to the present case. (Affirm. Of Timothy Hill in Supp. of Defs.' Mem. in Obj., Ex. 3, Tr. of Second Circuit argument held on April 26, 2011 at 9). In *Pittsburgh Press*, the Supreme Court held that a municipal ordinance prohibiting newspapers from publishing gender designated "help-wanted" advertising columns passed constitutional muster, i.e., did not violate the publisher's rights under the First Amendment. The following excerpt from that opinion is instructive:

> Discrimination in employment is not only commercial activity, it is illegal commercial activity under the Ordinance. We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. Nor would the result be different if the nature of the transaction were indicated by placement under columns caption 'Narcotics for Sale' and 'Prostitutes Wanted' rather than stated within the four corners of the advertisement.
>
> The illegality in this case may be less overt, but we see no difference in the principle here. Sex discrimination in non-exempt employment has been declared illegal under 8(a) of the Ordinance, a provision not challenged here.

*Id*. at 388-89.

*Pittsburgh Press* does not aid defendants. The pivotal distinction between the scenario in that case and the issue at hand, is that in *Pittsburgh Press* the illegality was embodied as part and parcel of the prohibited speech. Which is to say, the gender-based placement of the advertisements for non-exempt jobs was the speech for *Central Hudson* purposes. As such, the advertisements, like the marketing efforts of prostitutes and drug dealers, were to use defendants' term, "intrinsic" to their non-protected utterances. In contrast, the speech banned under the Oyster Bay Ordinance targets efforts to solicit employment. That some of those involved in that activity may endeavor to "sidestep[]...tax, employment, workers' compensation, labor and immigration laws," Defs.' Mem. in Obj. at 15, does not render the speech itself unlawful. *See Valle Del Sol, Inc. v. Whiting*, 709 F.3d 808, 821 (9th Cir. 2013) ("Arizona argues that the day labor provisions are permissible because they regulate speech only when associated with the unlawful activity of blocking or impeding traffic. *Arizona's* proposed rule would be a novel extension of *Central Hudson's* legality requirement, which is traditionally focused on the content of affected speech - i.e., whether the speech proposes an illegal transaction - instead of whether the speech is associated with unlawful activity.").

In sum, *Pittsburgh Press* does not advance defendants' position; moreover, absent from their present submissions are any cites to authority supportive of the proposition that, in assessing whether a commercial communication is constitutionally protected, it is appropriate to go *behind* the speech in an effort to discover if the persons communicating - or the recipients of the communications - are likely to satisfy any concomitant legal requirements, though not "intrinsic" to the solicitation, may, or may not thereafter arise. Such latter considerations are better left to the Internal Revenue Service, Homeland Security and like agencies, rather than inserted into constitutional jurisdiction via "a novel extension of *Central Hudson's* legality requirement." *Valle Del Sol, Inc.*, 709 F.3d at 821.

Moreover, Judge Lindsay did not err in considering this Court's ruling during the hearing regarding the temporary restraining order. At that hearing, this Court considered the illegality of day laborer transactions and concluded:

> The fact that some of the day laborers here may be illegally in the country - - and, of course, presumably some are not - - and the fact that to the extent the transaction occurs on a street corner and, accordingly, labor law requirements, may not be satisfied, I don't think renders the transaction unlawful for the purposes of the Central Hudson/Fox test. I don't believe that is what is meant.

5/20/10 Tr. at 65-66. Even though defendants assert that this Court's rulings during the TRO stage of this proceedings are not binding, Magistrate Judge Lindsay did not commit clear error in considering this Court's ruling and agreeing with its reasoning.

Nor did Judge Lindsay misinterpret any of the Second Circuit's comments during oral argument on the TRO determination regarding the lack of factual record on the issue of illegal activity.[6] The Second Circuit's opinion does not mandate the development of a factual record. It

---

[6]As discussed *supra*, after entering a TRO, the Court scheduled a preliminary injunction hearing, but before the hearing the defendants asked the court to convert the TRO into an

left it up to this Court to determine whether to keep the preliminary injunction in place or to hold

a preliminary injunction hearing, and the parties, following remand, agreed to leave the

preliminary injunction in place and proceed to a trial on the merits.  Further, any reliance on the

Second Circuit's comments on the lack of a factual record at the preliminary injunction stage,

does not provide justification to develop the facts at the discovery phase when a balancing of the

interests weighs in favor of non-disclosure.

Defendants' second basis for seeking to overturn the protective order shielding the

identity of plaintiffs' membership and other day laborers known to have solicited employment at

the locations covered by the Ordinance is that such information is said to be indispensable to

establishing that the "Ordinance is tailored to address the real world dangerous conditions created

by the personal conduct of the day laborers as they congregate on the street and sidewalks of the

Town."  (Defs.' Mem. in Obj. at 3).  That argument - given the chilling effect that such disclosure

is likely to produce as discussed supra is unpersuasive.  The Town, through its employees who

monitored the situation leading to the passage of the Ordinance, surely is in a position to provide

more than adequate evidence to articulate the Town's defense (*See e.g.*, Cardone Dep.).[7]

---

appealable preliminary injunction.  Therefore, there was no opportunity to develop a factual
record as to the issue of illegal speech.
      [7] The defendants also argue that the discovery is relevant to other issues in the case,
particularly, the issue of whether or not plaintiffs can establish standing.  As is set forth in Part II
of this opinion, the Court does not find it necessary to obtain the names and other identifying
information of the members of Centro and the Workplace Project in order to conclude that the
plaintiffs have established standing on behalf of the organization itself. *See NYCLU v. New York
City Transit Authority*, 684 F.3d 286, 295 (2d Cir. 2012) (holding that since NYCLU "did not
sue on behalf of injured members, it need not identify any that have standing").
      Further, plaintiffs have assured defendants that they do not intend to offer proof or
advance any claim at trial regarding the impact of the Ordinance on individual day laborers.
(*See* Pls.' Mem. in Opp. to Defs.' Mem. in Obj. at 19), thereby eliminating any need for the
discovery on that basis.

Finally, the Court finds no error in Judge Lindsay's decision not to address any possibility that a confidentiality agreement could cure the disclosure issues at hand. While the defendants offer that the information sought would not be disclosed to any law enforcement, government agency, third-party, or the public, the agreement does nothing to assuage the plaintiffs' fears about harassment from the Town, the very entity to whom the plaintiffs' members wish to remain anonymous.

It is clear from Judge Lindsay's opinion that the invasion of privacy that would result from the discovery outweighs any need the defendants have for the discovery.[8] Therefore, the Court concludes that Magistrate Judge Lindsay did not commit clear error or issue a decision contrary to law in deciding to issue a protective order to the plaintiffs.

### CONCLUSION

For the reasons set forth above, the defendants' motion for partial summary judgment is denied. The plaintiffs' motion to dismiss defendants' counterclaims is granted. Magistrate Judge Lindsay's decision to issue a protective order to plaintiffs is affirmed. This action is respectfully

---

[8] Though Judge Lindsay does not specifically discuss them, the Court notes that in cases involving plaintiffs whom defendants suspect to be undocumented aliens, courts often issue protective orders to protect plaintiffs from intimidation or harassment and the chilling effect that discovery of immigration status could have on potential plaintiffs, often referred to as an *in terrorem* effect. *See Equal Employment Opportunity Commission*, 225 F.R.D. at 406 (finding that discovery of immigration status would constitute unacceptable burden on public interest due to a chilling effect); *Trejos v. Edita's Bar and Restaurant, Inc.*, 2009 WL 749891, *2, (E.D.N.Y. Mar. 17, 2009) (precluding discovery regarding green cards or working papers because the *in terrorem* effect outweighed the need for disclosure). Though the discovery at issue here is not simply the immigration status of the plaintiffs' members, but their identities in general, those rulings imply that the same *in terrorem* effect could be applied here, where immigration status easily could be obtained from the requested information.

referred to Magistrate Judge Lindsay for all remaining pretrial supervision.[9]  This includes

plaintiffs' motion to quash third party subpoenas which is currently pending.




                                                            **_SO ORDERED._**

Dated:  Central Islip, New York
          June 18, 2013


                                             _____/s/_____
                                             Denis R. Hurley
                                             Unites States District Judge

---

[9] Plaintiffs' request for a pre-motion conference regarding its anticipated motion to compel the deposition of PSO Cocchi (Docket Nos. 87,88) and defendants' request for a pre-motion conference regarding an anticipated motion for a protective order striking the deposition of PSO Cocchi (Docket No. 91) are denied without prejudice and with the right to renew before Magistrate Judge Lindsay.