UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CENTRO DE LA COMUNIDAD                  :
HISPANA DE LOCUST VALLEY and
THE WORKPLACE PROJECT,                  :
                                                      10 Civ. 02262 (DRH)
                    Plaintiffs,           :
      -against-
                               :
TOWN OF OYSTER BAY and JOSEPH
SALADINO, Town of Supervisor of the     :
Town of Oyster Bay,
              Defendants.             :
-------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR ATTORNEYS FEES

LEON FRIEDMAN
685 Third Avenue, 25th floor
New York, N.Y. 10017
(646) 825-4398

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Preliminary Statement.................................................................... 1

STATEMENT OF THE CASE......................................................... 2

ARGUMENT

I.    Plaintiffs Are Prevailing Parties in this Litigation and Are Entitled to an
      Award of Their Attorneys' Fees and Costs............................................ 5

II.   The Time Expended by Plaintiffs Counsel on the Case Was Reasonable
      And Should be Compensated......................................................... 6

      A. Plaintiffs Attorneys Expended a reasonable Number of Hours................7

      B. Plaintiffs Are Entitled to All the Hours Expended in the Case...................9


III.  The Hourly Rates Requested for Plaintiffs' Counsel Are Reasonable..............10

      A. The Methodology for Determining Hourly Rates............................... 11

      B.  Applying the Above Factors, the Rates Requested Are Reasonable........... 13

           1.  The Experience, Reputation and Ability of the Attorneys.............. 13
           2.  Awards in Similar Cases.................................................. 16

                a.  Plaintiffs Are Entitled to Hourly Rates Prevailing in the
                    Southern District......................................................16
                b.  If Eastern District Rates are Applied, the Rates Requested
                    Are Reasonable........................................................ 21

           3.  Customary Fee Charged by Counsel and Actual Billing Practice......24
           4.  Awards in Prior Cases.................................................. 24

CONCLUSION................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdell v. City of New York,*
No. 05-CV-8453, 2015 WL 898974 (S.D.N.Y. March 2, 2015)............................24

*In re Agent Orange Prod. Liab. Litig.,*
818 F.2d 226 (2d Cir. 1987)............................................................16

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,*
522 F.3d 182 (2d Cir. 2007) ...........................................13, 16, 17, 24

*Barbour v. City of White Plains,*
788 F.Supp.2d 216 (S.D.N.Y. 2011)...................................................19

*Barbour v. Colvin,*
No. 12–CV–00548ADS, 2014 WL 7180445 (E.D.N.Y. Dec. 10, 2014)................23

*Barrella v. Village of Freeport,*
43 F.Supp.3d 136 (E.D.N.Y. 2014).......................................................22

*Blakey v. Continental Airlines,*
2 F. Supp. 2d 598 (D.N.J. 1998)...........................................................12

*Blum v. Stenson,*
465 U.S. 886 (1984) ..................................................................11, 20

*Board of Education Island Trees Union Free School District No. 26 v. Pico,*
457 U.S. 853 (1982) ......................................................................14

*Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing, Inc.,*
No. 11 Civ. 4308 (PGG), 2013 WL 6171660 (S.D.N.Y. November 25, 2013) ........20

*Central American Refugee Center v. City of Glen Cove,*
753 F.Supp. 437 (E.D.N.Y. 1990)........................................................17

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
420 F. App'x 97 (2d Cir. 2011)..............................................................2

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,*
128 F. Supp. 3d 597 (E.D.N.Y. 2015)......................................................3

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,*
954 F. Supp. 2d 127 (E.D.N.Y. 2013)......................................................3

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
   868 F.3d 104 (2d Cir. 2017) ........................................................................................................ 3

*Colon v. Berryhill*,
   No. 06 Civ. 06314 (PKC), 2018 WL 1730335 (E.D.N.Y. April 9, 2018) ..................................23

*Demonchaux v. Unitedhealthcare Oxford*,
   No. 10 Civ. 4491 (DAB), 2014 WL 1273722 (S.D.N.Y. March 27, 2014) ................................20

*DiFilippo v. Morizio*,
   759 F.2d 231 (2d Cir. 1985) .......................................................................................................... 8

*El Comité de Trabajadores Por El Progreso y Bienestar Social v. Freehold*
   *Borough*,
   No. 03 Civ. 6180, 2006 WL 3490619 (D.N.J. 2006) ...................................................................18

*Encalada v. Baybridge Enterprises, Inc.*,
   No. 14 Civ. 3113 (BMC), 2014 WL 4374495 (E.D.N.Y. September 2, 2014) ..........................12

*Favors v. Cuomo*,
   39 F.Supp. 3d 276 (E.D.N.Y. 2014) ...........................................................................................24

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
   No. 08 Civ. 6030(GEL), 2009 WL 2150891 (S.D.N.Y. July 20, 2009) .....................................20

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1993) .....................................................................................................12

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) .......................................................................................................... 7

*Gonzalez v. Pritzker*,
   No. 10-CV-3105 (FM), 2016 WL 5395905 (S.D.N.Y. September 20, 2016) .............................24

*Gusman v. Unisys Corp.*,
   986 F.2d 1146 (7th Cir. 1993) .....................................................................................................17

*Hensley v. Eckerhart*
   461 U.S 424 (1983) ..........................................................................................................2, 5, 6, 11

*John Doe No. 1 v. Village of Mamaroneck*,
   462 F.Supp. 2d 520 (S.D.N.Y. 2006) .........................................................................................18

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .......................................................................................................11

*Kassim v. City of Schenectady*,
   415 F.3d 246 (2d Cir. 2005) .......................................................................................................10

*Kim v. Kum Gang, Inc.*,
No. 12 CIV 6344 (MHD), 2014 WL 2514705 (S.D.N.Y. June 2, 2014) ................... 19, 20, 21

*LeBlanc-Sternbrg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998) .................................................................................. 12

*Lochren v. County of Suffolk*,
No. 01-Civ-3925(ARL), 2010 WL 1207418 (E.D.N.Y. Mar. 23, 2010) ........................ 22, 24

*Luca v. County of Nassau*,
No. 04-CV-4898 (FB), 2008 WL 2435569 (E.D.N.Y. June 16, 2008), *aff'd in part, vacated in part, remanded*, 344 F. App'x 637 (2d Cir. 2009) ....................................... 21

*LV v. New York City Dep't of Educ.*,
700 F. Supp. 2d 510 (S.D.N.Y. 2010) ...................................................................... 12

*Manley v. Midan Rest, Inc.*
No. 14 Civ. 1693 (HBP), 2017 WL 1155919 (S.D.N.Y. March 27, 2017) ............................ 21

*Martinez v. Bethlehem Steel Corp.*,
973 F.2d 96 (2d Cir. 1992) .................................................................................. 6, 9

*Mawere v. Citco Fund Services (USA) Inc*,
No. 09 Civ. 1342(BSJ)(DF), 2011 WL 6779319, *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011) ............................................... 19

*McGee v. United States*,
402 U.S. 79 (1982) .......................................................................................... 14

*Miele v. New York State Teamsters Conference Pension. & Ret Fund*,
831 F.2d 407 (2d Cir. 1987) ................................................................................. 11

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011) .................................................................................. 6

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .............................................................................. 7

*Nautilus Neurosciences v. Fares*,
No, 13 Civ. 1078 (SAS), 2014 WL 1492481 (S.D.N.Y. April 6, 2014) ............................. 20

*Nicholson v. Williams*,
No. 00 CV 2229 (JBW), 2004 WL 4780498 (E.D.N.Y. April 5, 2004) ............................. 21

*Norman v. Hous. Auth. of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) ............................................................................. 9

*Perdue v. Kenny A. ex rel. Winn*,
130 S. Ct. 1662 (2010) ................................................................................. 6, 24

*Perez v. Westchester Cnty. Dep't of Corr.*,
587 F.3d 143 (2d Cir. 2009) .............................................................................. 6

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust
Fund*,
450 F.3d 91 (2d Cir.2006) ................................................................................ 12

*A.R. ex rel. R.V. v. City of New York*,
407 F.3d 65 (2d Cir. 2005) ......................................................................... 17, 22

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
818 F.2d 278 (2d Cir. 1987) ............................................................................ 24

*Reiter v. MTA New York City Transit Auth.*,
457 F.3d 224 (2d Cir. 2006) .............................................................................. 6

*Restivo v. Nassau County*,
No. 06-CV-6720 (JS), 2015 WL 7734100 (E.D.N.Y. November30, 2015) ........................... 19

*Restivo v. Nassau County*,
No. 06-CV-6720 (JS), 2017 WL 3727366 (E.D.N.Y. August 28, 2017) .............................. 23

*Restivo v. Nassau County*.
No. 06-CV-6720 (JS), 2017 WL 3737366 (E.D..N.Y. October 27, 2017)............................ 24

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008) ...................................................... 19, 20, 24

*Simmons v. New York City Transit Auth.*,
575 F.3d 170 (2d Cir. 2009) ....................................................................... 13, 16

*Stanczyk v. City of New York*,
752 F.3d 273 (2d Cir. 2014) .............................................................................. 6

*Thorsen v. County of Nassau*,
No. 03-CV- 1022(ARL), 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011)............................... 23

*Townsend v. Benjamin Enters., Inc.*,
679 F.3d 41 (2d Cir. 2012) ............................................................................... 11

*United States v. $61,900*,
No. 10 Civ. 1866(BMC), 2012 WL 1202015 (E.D.N.Y. April 5, 2012)............................... 22

*United States v. City of New York*,
No 07-CV -2067 (NGG), 2013 WL 5542459 (E.D.N.Y. August 30, 2013) ............... 22, 23, 24

*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.,*
   71 F.3d 1053 (2d Cir. 1995) ...................................................................................................10

*In re Visa Check/Mastermoney Antitrust Litigation,*
   Master File No. 96–CV–5238, 2009 WL 3367059 (E.D.N.Y. Oct.15, 2009) ........................23

*Warren v. Astrue,*
   No. 06–CV–2933 CBA, 2011 WL 5402493 (E.D.N.Y. Nov. 7, 2011) ..................................23

*Weather v. City of Mount Vernon,*
   No. 08 Civ. 192 (RPP), 2011 WL 2119689 (S.D.N.Y. May 27, 2011) ..................................20

**Statutes**

42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CENTRO DE LA COMUNIDAD                          :
HISPANA DE LOCUST VALLEY and
THE WORKPLACE PROJECT,                          :

                                            10 Civ. 02262 (DRH)

                   Plaintiffs,                  :
     -against-

                             :

TOWN OF OYSTER BAY and JOSEPH
SALADINO, Town of Supervisor of the             :
Town of Oyster Bay,
               Defendants.                        :
-----------------------------------------------------------x

CORRECTED COPY

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR ATTORNEYS FEES

Preliminary Statement

        Plaintiffs succeeded in this eight-year litigation in striking down a local ordinance

that prohibited persons standing near a public right of way from stopping or attempting to stop

vehicles in an effort to solicit work. The ordinance also effectively prohibited drivers from

stopping to solicit employees or to accept a solicitation of employment. The obvious purpose of

the law was to stop day laborers (mostly Hispanic) from waiting on street corners hoping to

secure daily employment. As this Court, and subsequently the Second Circuit found, the

ordinance was so broad in its reach that it violated the laborers' First Amendment right to solicit

employment.

        On May 18, 2010, Plaintiffs brought an action under 42 U.S.C. § 1983, alleging that the

ordinance violated the First and Fourteenth Amendment. The case went on for eight years with

extensive discovery, hotly contested motion practice, and two appeals to the Second Circuit. In

addition to pursuing the Circuit's instruction in its first decision to build a factual record

concerning the Ordinance, the plaintiffs spent substantial time and resources seeking to end a

1

police presence at the site where the day laborers gathered that had begun after the appellate affirmance of this Court's preliminary injunction. Two years later, the Court granted a permanent injunction against enforcement of the Ordinance.

The successful plaintiffs now seek their reasonable attorneys' fees for their long and fruitful efforts. Under the Civil Rights Attorneys Fees Award Act, 42 U.S.C. §1988, successful civil rights attorneys are entitled to recover their fees in representing their clients. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart,* 461 U.S 424, 435 (1983). Plaintiffs did obtain excellent results and therefore they are entitled to a fully compensatory fee.

## STATEMENT OF THE CASE

This case began in May 2010 when the plaintiffs sued the Town of Oyster Bay and its Town Supervisor (collectively "the Defendants") under 42 U.S.C. § 1983 to enjoin them from enforcing a then-recently enacted ordinance prohibiting any person, while standing on a public sidewalk, from performing "any request, offer, enticement or action" that seeks or offers work in a manner that urges any motorist to stop any motor vehicle utilizing public right of way. Complaint pars, 30-31, dated May 18, 2010, Dkt # 1. This Court entered a temporary restraining order in favor of the plaintiffs and subsequently granted the defendants' unopposed request to convert that order into a preliminary injunction. Order, dated June 1, 2010, Dkt # 19. The defendants took an immediate appeal of the preliminary injunction. The Second Circuit remanded the case without reaching the merits of the dispute, because the factual record on appeal was not sufficiently developed. However, it left the preliminary injunction in place. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,* 420 F. App'x 97 (2d Cir. 2011).

2

Plaintiffs filed an amended complaint on September 29, 2011 (Dkt # 40). Many discovery disputes and motion practice followed. Plaintiffs' counsel served three sets of interrogatories and four sets of requests to produce documents. Defendants responded to these requests and served upon Plaintiffs their own discovery requests. Defendants produced over two thousand pages of documents in discovery, requiring a significant expenditure of attorney time to review. The parties took approximately sixteen depositions of fact and expert witnesses.

The parties' most significant discovery dispute was over the defendants' demands for the "identities of the specific members of the plaintiff organizations as well as day laborers known to them," demands that the plaintiffs successfully opposed. *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,* 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013). The magistrate judge issued a protective order prohibiting this discovery. This Court affirmed. *Id.*, This Court also denied a motion by the defendants for partial summary judgment claiming that plaintiff Centro lacked standing. *Id.* at 135-36. It also granted the plaintiffs' motion to dismiss with prejudice the defendants' four counterclaims. *Id.* at 138-39.

Particularly intensive discovery efforts were devoted to challenging a police presence that began almost immediately after the Second Circuit's decision. Having been barred from using the ordinance to prevent day laborer solicitation, the Town commenced a daily police presence at the site where the day laborers gathered. As described in the supporting declaration of Alan Levine, pars 11-15, the police were present at the site at the very hours and days when the day laborers were there. The police presence had the predictable effect of deterring both the day laborers from gathering and contractors from picking them up. In the belief that the stationing of police at the site was an attempt to circumvent this Court's preliminary injunction, the plaintiffs served document requests and took several depositions of police officers. After

3

two years of discovery and the preparation of a letter seeking permission to make a motion to enjoin the police presence, surveillance ended.

Following the close of discovery, the Court considered and granted the plaintiffs' motion for summary judgment, finding that the plaintiffs had standing to sue and that the Ordinance violated the First Amendment, granting a permanent injunction against the Ordinance's enforcement, and entering judgment in favor of the plaintiffs. *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,* 128 F. Supp. 3d 597, 601 (E.D.N.Y. 2015). The defendants again appealed to the Second Circuit, which affirmed this Court's decision. *See* 868 F.3d 104 (2d Cir. 2017).

Pursuant to a stipulation so-ordered by this Court, the time for the plaintiffs to file their motion for attorney's fees and costs was extended initially to sixty days after the issuance of the Second Circuit mandate. Further extensions were made as the parties sought to resolve the matter. (Dkt # 150). Additional extensions to file the fee petition were approved by the Court until May 30, 2018. (Dkt # 156)

Plaintiffs' attorneys actually spent many hours more than the "hours included" in the following chart. See discussion in Declaration of Jackson Chin, dated May 30, 2018, pars. 25-30. The reduced figures are the product of their exercise of billing judgment, as discussed below. Notably, LatinJustice does not seek additional compensation for the more than 1000 hours spent by two of its junior lawyers, Alba Villa and Kyle Valenti. *Id.* Moreover, the plaintiffs' fees request excludes entirely the three hundred hours of assistance and support contributed by over a dozen law students to LatinoJustice and the NYCLU in the form of legal research and other projects in this matter over the years.

The plaintiffs' lodestar amounts are contained in the following chart.

## PLAINTIFFS' ATTORNEYS FEES AND COSTS

| | Law School Year | Rate Requested | Hours Included | Total Lodestar |
|---|---|---|---|---|
| **LATINOJUSTICE PRLDEF** | | | | |
| Alan Levine | 1962 | 600 | 1208 | $724,800 |
| Jackson Chin | 1984 | 475 | 344 | $163,400 |
| Elizabeth Joynes | 2010 | 350 | 1053 | $368,550 |
| Laura Huizar | | | | |
| pre-bar | 2012 | 150 | 133 | |
| post bar | | 300 | 570 | $190,950 |
| Bianca Scott (law graduate) | 2015 | 150 | 288 | $ 43,200 |
| Kyle Valenti (law graduate) | 2013 | 150 | 471 | $ 70,650 |
| Alba Villa (law graduate) | 2011 | 150 | 556 | $ 83,400 |
| Total | | | | $1,644,950 |
| | | | | |
| **NYCLU** | | | | |
| Arthur Eisenberg | 1968 | 600 | 165 | $ 99,000 |
| Corey Stoughton | 2002 | 400 | 193 | $ 77,200 |
| Mariko Hirose | 2008 | 400 | 45 | $ 18,000 |
| Jordan Wells | 2013 | 300 | 135 | $ 40,500 |
| Total | | | | $234,700 |
| GRAND TOTAL | | | | $1,879,650 |

LatinoJustice has made the following deductions from its lodestar in the exercise of billing judgment:

- No compensation is sought for the more than 1000 hours that Kyle Valenti and Alba Villa worked on the case.
- Alan Levine has deducted 39 hours of travel time from his fee request.
- Jackson Chin has deducted 82.5 hours from his fee request.
- Laura Huizar's travel time of 32.4 has been deducted from her fee request.
- Elizabeth Joynes' travel time of 90.2 has been deducted from her fee request.

See discussion in Declaration of Jackson Chin, dated May 30, 2018, pars. 25-30; Levine Decl.

paras. 34-35. Accordingly, with those deductions, the fee request for LatinoJustice attorneys is:

| | |
|---|---|
| Alan Levine | $701,400 |
| Jackson Chin | $124,210 |
| Elizabeth Joynes | $336,980 |
| Laura Huizar | $181,230 |
| Bianca Scott | $43,200 |
| Total | $1,387,020 |

5

In addition, the NYCLU and LatinoJustice, in the exercise of billing judgment, have made an across-the-board 10% reduction to their compensable hours. In the case of LatinoJustice, that billing judgment accounts for overstaffing in such situations as conferences and depositions. Accordingly, the total LatinoJustice fee request including Alan Levine is reduced to $1,248,318 and the NYCLU fee request is reduced to $211,230. In addition, Plaintiffs also seek $22,700 in fees for Leon Friedman who prepared the instant fee petition.

The totals are therefore:

| | |
|---|---|
| LatinoJustice: | $1,248,318 |
| +NYCLU: | $211,230 |
| Total LJ & NYCLU: | $1,459,548 |
| +Leon Friedman | $22,700 |
| Grand total | $1,482,248 |

(See Levine Decl pars. 33-35; Eisenberg Decl. par. 16; Chin Decl. par 23 &28; Friedman Declaration, par.5)

The plaintiffs also seek reimbursement for litigation costs totaling $26,080. Itemized lists of the costs borne by LatinoJustice and the NYCLU are attached to the Chin declaration para 28 as Exhibit 6 and to the Eisenberg declaration as Exhibit I, respectively.

## ARGUMENT

I.   PLAINTIFFS ARE PREVAILING PARTIES
     IN THIS LITIGATION AND ARE ENTITLED TO AN AWARD
     OF THEIR ATTORNEY'S FEES AND COSTS

The purpose of the attorney's fees award provisions of the civil rights acts is to permit plaintiffs with valid claims to attract effective legal representation and thereby encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983).[1] "Where a plaintiff has obtained excellent results, his

---

[1] The Supreme Court in *Hensley* quoted from the Senate Report on the Civil Rights Attorney Fees Award Act as follows:

6

attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435; The Plaintiffs certainly achieved "excellent results"— an injunction against the Oyster Bay ordinance —and are entitled to a "fully compensatory fee." *Id.* In light of the extraordinary results achieved over the course of a protracted eight-year litigation, Plaintiffs should receive their "fully compensatory fee." Their reasonable fee request should be granted in full.

## II. THE TIME EXPENDED BY PLAINTIFFS COUNSEL ON THIS CASE WAS REASONABLE AND SHOULD BE COMPENSATED

To calculate reasonable fees, federal courts initially determine the lodestar amount which may later be adjusted upwards or downwards based on other considerations. The Supreme Court recently reaffirmed the lodestar method as the proper starting point in determining fees. *See Perdue*, 130 S.Ct. at 1673 ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective [of securing attorneys to take on civil rights cases.]"); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'").

The first step in setting the lodestar is to determine the amount of time reasonably expended and therefore compensable. The number of hours reasonably expended is a "factual issue whose resolution is committed to the discretion of the district court." *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (internal citation and quotation omitted). In making this factual determination, the Court may take into account both its own familiarity

---

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. *Hensley*, 461 U.S. at 445 (footnote omitted)

7

with the litigation and the attorneys, as well as the general circumstances that apply to

contingency-fee civil rights cases. As the Ninth Circuit has noted:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in
> the hope of inflating their fees. The payoff is too uncertain, as to both the result
> and the amount of the fee. It would therefore be the highly atypical civil rights
> case where plaintiff's lawyer engages in churning. By and large, the court should
> defer to the winning lawyer's professional judgment as to how much time he was
> required to spend on the case; after all, he won, and might not have, had he been
> more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). If the Court does conclude

that any hours for which compensation is sought should not be awarded, it must "state its reasons

for excluding those hours as specifically as possible." *Gierlinger v. Gleason*, 160 F.3d 858, 876

(2d Cir. 1998) (internal quotation omitted).

### A. Plaintiffs' Attorneys Expended a Reasonable Number of Hours

The total number of hours is exceedingly reasonable given the substantial scope of this

litigation to date. The attached Declarations of Alan Levine and Jackson Chin describe the long

and difficult path that this case took to the ultimate successful conclusion. Plaintiffs made a

concerted effort to resolve the matter initially. After the Defendants refused to resolve the matter,

plaintiffs engaged in intensive legal research and prepared a complaint and the necessary papers

for a temporary restraining order, later converted into a preliminary injunction. (Levine

Declaration dated May 30, 2018, par. 7). Plaintiffs' counsel then had to defend the lower court's

order before the Second Circuit. Over the next seven years, plaintiffs had to counter the Town's

effort to evade the district's court's order by assigning police to engage in extensive surveillance

of day laborers on the streets of the City. (Levine Decl., par. 11) Extensive discovery was

necessary to prove this surveillance, as well as necessary work to prove a violation of the

preliminary injunction order. (*Id.* par. 14-16). There was extensive litigation over discovery

disputes (*Id.* par. 17). Plaintiffs then had to prepare their motion for summary judgment which

8

was successful. (*Id*, par. 20). They then won the appeal to the Second Circuit.

In all of this work, counsel made sure that compensation was not sought for more than one senior counsel and one junior counsel, even though others may have participated. (Levine. Decl., par. 22) (Eisenberg Decl., par. 15) (Chin Decl., par 26).

In setting the lodestar, a district court will determine the amount of time reasonably devoted to the matter by "examin[ing] the hours expended by counsel and the value of the work product of the particular expenditures to the client's case," as informed by the court's "own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio,* 759 F.2d 231,235-36 (2d Cir. 1985). Here, the plaintiffs seek compensation for the work of attorneys at two non-profit organizations over a period of approximately eight years, including for the hours devoted to defending against the propriety of the defendants' wide-ranging discovery requests, defeating the defendants' motion for partial summary judgment, prevailing in their own motion for summary judgment, and prevailing on each of two appeals to the Second Circuit.

The plaintiffs' attorneys strived for efficiency while vigorously prosecuting the plaintiffs' constitutional claims. As is common in lengthy civil rights litigation, multiple lawyers worked collaboratively on this case. Each lawyer for whom fees are requested in this case played a distinct role in bringing the litigation to a successful conclusion, such as drafting sections of legal arguments to research and write and developing areas of the factual record. As demonstrated by their declarations filed with this motion, each of the plaintiffs' lead counsel has carefully documented the hours they spent on this case and their allocation to specific tasks. The attorneys seek compensation only for time reasonably expended, and have exercised billing

9

judgment, discounting time where appropriate. See Levine Decl, par. 21-22, Chin Decl. par 24-26, Eisenberg Decl. par.25.

In the exercise of billing judgment, counsel have reviewed every time record and deducted all attorney time that was deemed, in retrospect, to have been excessive or duplicative. Plaintiffs do not seek compensation for attorneys who performed only small amounts of work on the matter, regardless of the value of that work to the clients. Thus, although different attorneys at LatinoJustice alone worked on some part of the case -- many on discrete research assignments -- only three attorneys from LatinoJustice (aside from lead counsel Alan Levine seek compensation in this application. Levine Decl, 36, Chin Decl. par. 2 & 26. As a result, no compensation is sought for the more than 1,000 hours spent by two LatinoJustice lawyers who actively participated in discovery and performed legal research.

Although many NYCLU attorneys also worked on the case, compensation is sought for the work of only four lawyers. Eisenberg Decl, par 15. Moreover, the plaintiffs seek compensation for only two attorneys for each deposition, court appearances, and court conferences, even though frequently more than two attorneys participated.

B.     Plaintiffs Are Entitled to All the Hours Expended in the Case

Although the plaintiffs ultimately prevailed on their First Amendment claim, they are also entitled to be compensated for time spent prosecuting their claims, not reached by the Court, that the ordinance at issue violated Due Process and Equal Protection. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."). As here, so long as the suit as a whole involved a "common core of facts" and involved "related legal theories," all the

10

time spent on the case must be compensated. *See Kassim v. City of Schenectady,* 415 F.3d 246, 253 (2d Cir. 2005). Thus all the time expended on fighting the police surveillance of the day laborers activities is also compensable since the defendants withdrew the police from the day laborer site just after plaintiffs announced their intention to seek supplemental relief.

Time spent in preparing the fee application is also compensable. *See Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995) ("[A] successful applicant for § 1988 attorneys' fees should be awarded the costs of bringing its § 1988 application."). Plaintiffs thus seek compensation for such time, including Leon Friedman's work on this motion, a total of 45.4 hours for preparing the instant fee petition.

## III. THE HOURLY RATES REQUESTED FOR PLAINTIFFS' COUNSEL ARE REASONABLE

Plaintiffs are seeking reimbursement for time expended at the hourly rate of $600 for Alana Levine and Arthur Eisenberg, $475 for Jackson Chin, $400 for Corey Stoughton and Mariko Hirose, $350 for Elizabeth Joynes, $300 for Laura Huizar post bar admission work and Jordan Wells and $150 for three recent law school graduates, Bianca Scott, Kyle Valenti, and Alba Villa, who were legal fellows at the time they worked on the case. They are also seeking $500 for Leon Friedman for his work on the fee petition. These rates are reasonable and should be awarded.

### A. The Methodology for Determining Hourly Rates

The process of determining the appropriate hourly rate requires weighing a number of factors. The Supreme Court has declared that the reasonable hourly rate to be applied in awarding fees under statutory fee provisions is the "prevailing market rate," that is, the rate that lawyers of similar skill, reputation and experience would charge in the legal market of that geographic area. That rate is determined, as the Supreme Court held in *Blum v. Stenson*, 465 U.S.

11

886, 895–96 & n. 11 (1984), by examining the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation." Quoting from the Senate Report on the Civil Rights Attorneys Fees Act, the Supreme Court noted that: "'It is intended that the amount of fees awarded under [Section 1988] be governed by the same standards which prevail in other types of equally complex litigation, such as antitrust cases.'" *Blum,* 465 U.S. at 893 (quoting Senate Report No. 1011, 94th Cong., 2d Sess., 5 U.S. Cong. & Admin. News, p. 5908, 5913 (1976)).

A court must initially determine what lawyers of comparable skill and experience handling other complex litigation charge their private clients, as "the rates charged in private representations may afford relevant comparisons." *Blum,* 465 U,S, at 895, n.11; *see also Miele v. New York State Teamsters Conference Pension. & Ret Fund*, 831 F.2d 407, 409 (2d Cir. 1987). The Second Circuit has noted: "[T]his Court has instructed that determination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.' " *Townsend v. Benjamin Enters., Inc.,* 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton Cnty.,* 433 F.3d 204, 209 (2d Cir.2005)).

Other factors relating to the determination of hourly rates were suggested in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), and accepted by the Supreme Court as relevant to arriving at the appropriate rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 430-31 (1983). These include (1) the experience, reputation and ability of the attorneys; (2) the customary fee charged by counsel and their actual billing practice, to the extent they support the rate requested; and (3) previous awards to the counsel seeking fees. Courts have also noted:

12

(4) "the reasonable hourly rate should reflect the complexity of the particular case." *Encalada v. Baybridge Enterprises, Inc.,* No. 14 Civ. 3113 (BMC), 2014 WL 4374495 *2 (E.D.N.Y. September 2, 2014).

The reasonable hourly rate is determined "by reference to prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91, 97 n.6 (2d Cir.2006). This action is a civil rights lawsuit involving complex First Amendment, standing and due process issues. Thus, to assess the reasonableness of hourly rates, it is the complex litigation bar that is the "relevant legal community" to use for comparison purposes *See LV v. New York City Dep't of Educ.,* 700 F. Supp. 2d 510, 515-18 (S.D.N.Y. 2010) (describing benefits of large class-action firm in civil rights litigation).

It is well-established that attorneys' "current rates rather than historical rates should be applied [to all hours expended] in order to compensate for the delay in payment." *LeBlanc-Sternbrg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998); *see also Gates v. Deukmejian,* 987 F.2d 1392, 1406 (9th Cir. 1993) ("We have long recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rates rather than historic rates in order to adjust for inflation and loss of the use [of] funds]."); The plaintiffs' requested rates therefore reflect current rates.

In addition to examining prevailing market rates, the Second Circuit has instructed district courts to examine "case-specific variables" that are "relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009). These variables include the so-called *"Johnson"* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the

13

attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill,* 522 F.d at 186, n. 3

## B. Applying the Above Factors, The Rates Requested Are Reasonable

We have previously described some of the factors mentioned in the *Simmons* case. The time and labor was extensive. The questions were indeed novel. The fee was totally contingent. The results obtained were excellent. Other factors are discussed below.

## 1. The Experience, Reputation and Ability of the Attorneys

We are seeking rates of $600 per hour for Alan Levine and for Arthur Eisenberg. Plaintiffs are also seeking rates of up to $475 per hour for attorneys between 20 and 40 years of experience; they are seeking rates of $400 per hour for those with experience between seven and 20 years of experience; and they are seeking rates of $300 per hour for those with experience between two and seven years' experience. They are also seeking rates of $150 per hour for recent law graduates employed as legal fellows. The hours set forth in the chart are based upon contemporaneous time records, which are appended to the declarations of Alan Levine and Arthur Eisenberg.

Mr. Levine graduated from Yale Law School in 1962 and has been special counsel at LatinoJustice PRLDEF since 2000. He acted as a civil rights lawyer during the mid-1960's and then became staff counsel at the N.Y.C.L.U. He worked for private civil rights law firms thereafter. He argued two cases before the United States Supreme Court , *McGee v. United States*, 402 U.S. 79 (1982), a Selective Service case, and *Board of Education Island Trees Union*

14

*Free School District No. 26 v. Pico,* 457 U.S. 853 (1982) an important First Amendment case. He has also litigated a large number of important civil rights cases in the lower federal courts and the New York courts. (Levine Decl. par. 27.)

Mr. Eisenberg graduated from Cornell Law School in 1968 and joined the New York Civil Liberties Union in 1971. He has been the legal director of the N.Y.C.L U. for the past twenty-five years. He participated in over 20 cases before the United States Supreme Court and in numerous other lower court cases involving civil liberties issues. He has taught courses in constitutional litigation for more than 25 years at Cardozo Law School and the University of Minnesota Law School. (Eisenberg Decl. par. 11, 12 and Exhibit A)

Mr. Jackson Chin graduated from the University California Hastings College of Law in 1984. He would now be considered a Senior partner, based on over 32 years of legal experience. He has held senior positions in a number of no-for-profit legal organizations, and received the New York City Bar Association's 29th Annual Legal Services Award for his many years of pro bono legal services. He was one of a team of lawyers who received the "Trial Lawyer of the Year" national award by the Public Justice organization. Chin Decl, par.7.

Ms. Corey Stoughton graduated from Harvard Law School in 2002, served as a law clerk for Judge Cornelia Kennedy of the Sixth Circuit and then joined the ACLU and the NYCLU from 2004 to 2015. She was an adjunct clinical professor of law at N.Y.U. Law School from 2007-2015. (Eisenberg Decl., par. 6 and Exhibit C, containing full resume). She would be considered a junior partner.

Ms, Mariko Hirose graduated from Stanford Law School in 2008, clerked for Judge Stephen Reinhardt of the Ninth Circuit. She joined the ACLU in 2009. Her work on the case is described in Eisenberg Decl. par 8. Her resume appears in Exhibit C to Eisenberg Declaration.

15

Ms. Elizabeth Joynes graduated from Fordham Law School in 2010. She joined LatinoJustice in 2010 as a Skadden Fellow, and was appointed Associate Counsel in 2012 and worked in a number of civil rights cases in such capacity, including this case. She participated in this case under the supervision of Alan Levine from September 2011 through October 2014, (Chin. Decl. 4. She would also be considered a junior partner.

Ms. Laura Huizar graduated from Yale Law School in 2012 and joined LatinoJustice. She worked on this case under the supervision of Alan Levine and Elizabeth Joynes. (Chin Decl. par. 19). She would now be considered a senior associate. Part of her work in this case was done before she was admitted to the bar. Plaintiffs seek compensation at $150 per hour for the time she spent prior to admission and $300 for time spent after admission. (Chin. Decl. par. 21)

Mr. Jordan Wells graduated from New York University Law School in 2013. He has worked at the N.Y.C.L.U. from 2013 to 2016. Eisenberg Decl. par. 10 and Exhibit D.

Bianca Scott graduated from the University of Texas Law School in 2015 and joined LatinoJustice that same year. She seeks a law clerk pre-bar admission rate of $150.

Leon Friedman, who worked only on the fee petition, graduated from Harvard Law School in 1960 and is presently a professor of Constitutional Law at Hofstra Law School. He was a staff counsel at the A.C.L.U. in the early 1970's where he worked on many cases dealing with the Vietnam War and the impeachment of President Richard Nixon. See Friedman decl. par.  He participated in over 20 cases in the United States Supreme Court. He has extensive experience in attorneys' fees cases, as indicated in his declaration, pars. 6-11.

**2.  Awards in similar Cases.**

**a.  Plaintiffs Are Entitled to Hourly Rates Prevailing in the Southern District**

The hourly rates awarded in a fee petition are generally the rates awarded in the forum where the case is litigated, but in exceptional circumstances out-of-district rates may be awarded.

16

In *Simmons v. New York City Transit Authority*, the Second Circuit held that to overcome the presumption of in-district rates "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." 575 F.3d 170, 173 (2d Cir. 2009); *see also Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 184, n.2 (2d Cir. 2007) ("[A]ttorneys—regardless of whether they are pursuing litigation on behalf of a paying client or a non-paying client—should receive out-of-district fees only if a reasonable, paying client would have retained out-of-district counsel."). "In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors [such as] counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." *Simmons*, 575 F.3d at 173. Further, "[a]mong the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, *Agent Orange*, 818 F.2d at 232, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.*

The fact that Manhattan lawyers may charge more than Brooklyn or Long Island attorneys has not deterred clients from crossing the East River bridges. It speaks to the value of those attorneys' skills and experience, relative to their fees. Indeed, a more expensive but more experienced lawyer may end up costing the client less money, as Judge Easterbrook has noted:

> Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues. Clients are willing to pay more, per hour, for these better lawyers. A $225 per hour lawyer may end up costing less than a $150 lawyer for the same result or may produce better results for the same total bill. Markets recognize these truths; judges must too.

17

*Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir. 1993).

The Second Circuit has noted the problem of reducing hourly rates in one district below

the rates prevailing in a closely related district, noting that it may discourage Manhattan-based

lawyers from taking on civil rights cases in the Eastern District.

> If [hourly rates] are lower than those in another district, skilled lawyers from such
> other district will be dissuaded from taking meritorious cases in the district with
> lower rates. If lawyers are paid for their participation in IDEA proceedings that
> clearly arise in Queens at a rate considerably lower than what they are paid for
> representation in proceedings that clearly arise in Manhattan, experienced,
> Manhattan-based lawyers . . . may decide to devote their time and expertise to
> IDEA cases that arise in Manhattan rather than those cases in which parents are
> equally needful of their services, but that arise in Queens.

*A.R. ex rel. R.V. v. City of New York*, 407 F.3d 65, 81 (2d Cir. 2005).

In this case, the lawyers did have "special expertise" that would benefit plaintiffs. Alan

Levine had litigated three prior cases that, like this one, involved restrictions on the right of day

laborers to solicit employment from public sidewalks, the same type of ordinance involved in

this case. As he explains in his declaration, he was successful in all three cases: *Central*

*American Refugee Center v. City of Glen Cove,* 753 F.Supp. 437 (E.D.N.Y. 1990) (challenging

law prohibiting discussions of employment between persons on sidewalk and in cars; settlement

during pendency of appeal resulted in withdrawal of ordinance and establishment of a day

laborer hiring site); *El Comité de Trabajadores Por El Progreso y Bienestar Social v. Freehold*

*Borough*, 2006 WL 3490619 (D.N.J. 2006) (resulting in settlement barring use of loitering law

and other forms of harassment to interfere with day laborers ability to solicit employment in

public places); *John Doe No. 1 v. Village of Mamaroneck*, 462 F.Supp. 2d 520 (S.D.N.Y. 2006)

(enjoining racial discrimination against day laborers seeking employment in Village). Levine

Decl. par. 26.

In addition, LatinoJustice attorneys had worked with one of the plaintiff organizations in

18

the past, so employing LatinoJustice lawyers, who they knew and trusted, was both logical and justified. No client living on Long Island would have decided differently. As Levine states:

> Given LatinoJustice's day laborer work on Long Island in general, and with the Workplace Project in particular, given its bilingual legal staff, and given my experience with day laborer litigation, it was inevitable and appropriate that the Workplace Project would turn to LatinoJustice when the Oyster Bay Ordinance was adopted, threatening the ability of the Workplace Project's constituency to continue to solicit employment. Simply stated, no other law office on Long Island had similar qualifications to prosecute this litigation. For that reason, the use of Southern District of New York hourly rates in this fee application is appropriate.

The organizational plaintiffs also approached the Long Island office of the NYCLU for assistance. It then contacted the New York office where the actual litigators reside. The NYCLU had primary responsibility for the case through the preliminary injunction stage when LatinoJustice assumed primary responsibility. (Eisenberg Decl. par. 5, Levine Decl. par 3). Given the imminence of the effective date of the ordinance, the day-laborer organizational plaintiffs were under extreme time pressure to obtain legal representation that would protect their rights and those of their clients. The plaintiffs' attorneys swiftly stepped into the breach. The attorneys quickly obtained a temporary restraining order that effectively remained in place throughout the seven years of litigation until the ordinance was ultimately permanently enjoined. Thus, the plaintiffs' attorneys achieved immediate, excellent results. It is difficult to believe that any small office in the Eastern District could have come forward that quickly to protect the rights of the plaintiffs. Plaintiffs could not know whether any larger law office with sufficient personnel would have the inclination to take the case against an important municipal government. Thus on the face of the matter, this case meets the *Simmons* test, namely "that local counsel possessing requisite experience were unwilling or unable to take the case. "See *Restivo v. Nassau County*, 2015 WL 7734100 (E.D.N.Y. November30, 2015) * 3: (awarding Southern District rates for law firm with special expertise in the subject matter of the suit and which

19

obtained excellent results).

If Southern District rates are applied, there is no doubt that the rates requested here are

reasonable. The rate requested for Mr. Levine and Eisenberg —$600 an hour—is reasonable.

Civil rights lawyers with less experience than Mr. Levine and Mr. Eisenberg have been awarded

fees of $650 and $600 per hour in the Southern District in civil rights cases. In *Mawere v. Citco

Fund Services (USA) Inc*, No. 09 Civ. 1342(BSJ)(DF), 2011 WL 6779319, *report and

recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011), the Magistrate Judge

recommended that an attorney in the defendant law firm with 32 years of experience in

defending employers be awarded an hourly rate of $650 in a civil rights case. In 2011, *Barbour

v. City of White Plains*, 788 F.Supp.2d 216, 225 (S.D.N.Y. 2011) the court awarded $625 an hour

to a civil rights litigator with less than 30 years' experience. Six years ago, in *Rozell v. Ross-

Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008), two experienced civil rights attorneys with

qualifications similar to those of Mr. Levine and Eisenberg were awarded hourly rates of $600;

*see also Kim v. Kum Gang, Inc.*, No. 12 CIV 6344 (MHD) 2014 WL 2514705 at *2 (S.D.N.Y.

June 2, 2014) (awarding $600 per hour to experienced litigator).

The rates requested are also consistent with rates charged by senior litigators in other

areas, such as copyright, which is supposed to be the measure for civil rights attorneys as well.

*See Blum*, 465 U.S. at 895-96 & n. 11 (requiring courts to examine the "prevailing market rates

in the relevant community" for "similar services by lawyers of reasonably comparable skill,

experience and reputation."). In non-civil rights cases, such as copyright and trademark cases,

lawyers with reputations and experience similar to Mr. Levine or Mr. Eisenberg have received

hourly rates above $600. *See GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030(GEL),

2009 WL 2150891, at *7–8 (S.D.N.Y. July 20, 2009) (approving $600 to $650 hourly rate for

experienced intellectual property and $525 hourly rate for an attorney with eleven years'
experience. Kathleen Peratis, an experienced civil rights litigator also concludes that the rates
sought by Mr. Levine and Mr. Eisenberg are well within – indeed below – rates customarily
obtained by lawyers of comparable experience. Peratis declaration, Levine Decl. Exhibit C.

The $475 rate sought for Jackson Chin, the $400 rate for Corey Stoughton and Mariko
Hirose, the $350 rate for Elizabeth Joynes, and the $300 rate for Laura Huizar post-bar
admission and Jordan Wells are also reasonable, based on Southern District rates. *See
Demonchaux v. Unitedhealthcare Oxford,* No. 10 Cic. 4491 (DAB), 2014 WL 1273722 *7
(S.D.N.Y. March 27, 2014) (approving $500.00 per hour for senior associates); *Kim v. Kum
Gang, Inc.*, No. 12 Civ 6344 (MHD) 2014 WL 2514705 at *2 (S.D.N.Y. June 2, 2014) (awarding
$450 to lawyer with 7 or 8 years' experience; *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527
(S.D.N.Y. 2008) (six years ago, awarding $350 an hour to associate with 7 years' experience). In
addition, $337 to $350 per hour have been approved for associates with three to five years'
experience,). *See, e.g., Nautilus Neurosciences v. Fares,* No, 13 Civ. 1078 (SAS), 2014 WL
1492481, at *3 (S.D.N.Y. April 6, 2014) (approving hourly rate of $337.50 for an associate with
approximately three years of experience); *Kim v. Kum Gang, Inc.*, No. 12 Civ 6344 (MHD)2014
WL 2514705 at *2 (S.D.N.Y. June 2, 2014) (awarding $300 to a third-year associate).

The law clerk rate of $150 per hour has been upheld in cases in the Southern District, see
*Manley v. Midan Rest, Inc.* No. 14 Civ. 1693 (HBP), 2017 WL 1155919 (S.D.N.Y. March 27,
2017) at *12: "As to the fees for law clerk work, hourly rates between $120 and $150 have been
found to be reasonable."

### b. If Eastern District Rates are Applied, the Rates Requested are Reasonable

Courts in this district have previously recognized the close connection between the

Southern and Eastern District Courts. *See, e.g., Luca v. County of Nassau*, No. 04-CV-4898

(FB), 2008 WL 2435569, at \*9 (E.D.N.Y. June 16, 2008) (noting the unique proximity between

the Eastern and Southern District courts and finding that "a strict application of the forum rule

would ignore this geographic reality and its economic consequences."), *aff'd in part, vacated in

part, remanded*, 344 F. App'x 637, 641–42 (2d Cir. 2009); *Nicholson v. Williams,* No. 00 CV

2229 (JBW), 2004 WL 4780498, at \*11 (E.D.N.Y. April 5, 2004) ("Counsel who are located in

Manhattan, and who have developed certain expertise through their Manhattan based practice,

should not be penalized for representing clients in the Eastern District.").

The Second Circuit has noted the problem of reducing hourly rates in one district below

the rates prevailing in a closely related district, namely that it may discourage Manhattan-based

lawyers from taking on civil rights cases in the Eastern District. Indeed the large number of pro

se civil rights cases brought in the Eastern District (footnote 7, *supra*) may be an example of this

problem:

> If [hourly rates] are lower than those in another district, skilled lawyers from such
> other district will be dissuaded from taking meritorious cases in the district with
> lower rates. If lawyers are paid for their participation in IDEA proceedings that
> clearly arise in Queens at a rate considerably lower than what they are paid for
> representation in proceedings that clearly arise in Manhattan, experienced,
> Manhattan-based lawyers . . . may decide to devote their time and expertise to
> IDEA cases that arise in Manhattan rather than those cases in which parents are
> equally needful of their services, but that arise in Queens.

*A.R. ex rel. R.V. v. City of New York*, 407 F.3d 65, 81 (2d Cir. 2005).

Recent decisions have narrowed the alleged difference between Southern District and

Eastern District rates. Judge Cogan recently held that a Manhattan lawyer handling a complex

forfeiture case in the Eastern District was entitled to an hourly rate of $600. *See United States v.

$61,900*, No. 10 Civ. 1866(BMC), 2012 WL 1202015, \*7 (E.D.N.Y. April 5, 2012) (noting that

certain "cases, in which Brooklyn lawyers generally specialize, are high-volume practices that

22

bear little semblance to" the case at bar, which was "based on non-repetitive fact patterns and diverse and complex fields of law.") Likewise, this litigation was not another "high-volume" case, but one that involved "non-repetitive fact patterns and diverse and complex fields of law." The rates awarded by Judge Cogan are thus relevant here.

In addition, Judge Garaufis recently awarded experienced civil rights counsel hourly rates of $550, within the range of the Eastern District rates requested here for Mr. Levine and Eisenberg, *See United States v. City of New York*, No 07-CV -2067 (NGG) 2013 WL 5542459 (E.D.N.Y. August 30, 2013) * 8. And courts in the Eastern District have previously awarded to junior partners the $400 Eastern District rate sought by Mr Stoughton and Ms. Hirose. *See Barrella v. Village of Freeport*, 43 F.Supp.3d 136, 190 (E.D.N.Y. 2014) (awarding $400 an hour to partners with 11, 15 and 19 years' experience—much like the junior-partner-level attorneys here—in part due to "the degree of success obtained"); *Lochren v. County of Suffolk*, No. 01-Civ-3925(ARL) 2010 WL 1207418 at *3 (E.D.N.Y. Mar. 23, 2010) (four years ago, awarding $400 an hour to lawyers with 13–18 years' experience).

When complex litigations are brought in the commercial field, hourly rates of more than $600 are awarded. In a case decided after *Simmons*, *In re Visa Check/Mastermoney Antitrust Litigation*, Master File No. 96–CV–5238, 2009 WL 3367059 (E.D.N.Y. Oct.15, 2009) , the district court adopted a special master's recommendation that lead counsel be awarded $250 to $625 for attorneys and $110 to $170 for paralegals, that issuer's counsel be awarded between $198 and $792, and that underwriter's counsel be awarded between $200 and $945. This was three years ago. Since the hourly rates in complex civil rights cases are intended to follow awards in other complex litigation, that decision should be a model for this case as well.

See also *Colon v. Berryhill*, No 06-Civ.-06314 (PKC), 2018 WL 1730335 (E.D.N.Y.

23

April 9, 2018) at \*3 ($500 per hour for lawyer with substantial experience in Social Security cases) *Barbour v. Colvin*, No. 12–CV–00548ADS, 2014 WL 7180445, at \*2 (E.D.N.Y. Dec. 10, 2014) (approving $26,784 award for 44.7 hours of work for an effective hourly rate of $599); *Warren v. Astrue*, No. 06–CV–2933 CBA, 2011 WL 5402493, at \*1 (E.D.N.Y. Nov. 7, 2011) ("[A]lthough $25,000.00 is a substantial sum for 38 hours of work [*i.e.*, $657 hourly rate], it does not constitute a windfall when balanced against the excellent result counsel obtained and the risk of loss inherent in the retainer's contingency arrangement.").

The associate rates sought—ranging from $300 to $400 an hour—are also reasonable for the Eastern District market. *See United States v. City of New York*, No. 07-CV-2067 (NGG), 2013 WL 5542459 \* 8 (E.D.N.Y. August 30, 2013) (awarding $300 to $350 an hour for associates); *Thorsen v. County of Nassau*, No. 03-CV- 1022(ARL), 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011) (awarding $300 an hour for junior associate).

The hourly rate for law clerks is also reasonable. See *Restivo v. Nassau County*, No. 06-CV-6720 (JS), 2017 WL 3727366 (E.D.N.Y. August 28, 2017) at \*9. (awarding hourly rates of $125).

### 3. Customary Fee Charged by Counsel and Actual Billing Practice.

The "rate a paying client would be willing to pay" is a compelling factor in approving an hourly rate. *Arbor Hill*, 522 F.3d at 190; *see also Perdue*, 130 S.Ct. at 1672; *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 536-37 (S.D.N.Y. 2008).

Since the lawyers at LatinoJustice and the N.Y.C.L.U. generally take on civil rights from non-paying clients, most of the lawyers listed herein do not have a regular fee schedule. Leon Friedman charges his regular fee-paying clients at the rate of $500 per hour, the same rate he is seeking here. See Friedman Declaration, dated May 29, 2018   par. 5.

24

### 4. Awards in Prior cases.

Mr. Levine was award $600 per hour in an earlier Southern District case, *Abdell v. City of New York*, No. 05-CV-8453, 2015 WL 898974 (S.D. N.Y. March 2, 2015) (Levine Decl., par. 33). In that case, his hourly rate was reduced by the district judge because his colleague – who was awarded $650 per hour – was lead counsel. Mr. Chin was awarded $400 per hour in an Eastern District case, *Favors v. Cuomo*, 39 F.Supp. 3d 276 (E.D.N.Y. 2014) and $400 per hour in a Southern District case, *Gonzalez v. Pritzker*, No. 10-CV-3105 (FM) 2016 WL 5395905 (S.D.N.Y. September 20, 2016). Mr. Friedman was awarded $500 in a recent case in the Eastern District, *Restivo v. Nassau County*, No. 06-CV-6720(JS), 2017 WL 3737366 (E.D.N.Y. October 27, 2017) at *3, as well as $450 per hour in two other cases. *Lochren v. County of Suffolk*, No. 01-Civ-3925(ARL) 2010 WL 1207418) *3 (E.D.N.Y. March 3, 2010 and in *United States v. City of New York*, No. 07-CV-2067 (NGG), 2013 WL 5542459 *8 (E.D.N.Y. August 30, 2013).

Plaintiffs are also entitled to recover the costs in this action, totaling $ 28,060. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (prevailing plaintiff entitled to "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying client") (citations omitted).

### CONCLUSION

For the reasons stated herein, Plaintiffs' request for attorneys' fees and costs in the amount stated should be granted.

Dated: May 30, 2018

/s/ Leon Friedman
LEON FRIEDMAN (LF#7124)
685 Third Ave, 25th floor
New York, N.Y. 10017
(646) 825-4398

*Attorneys for Plaintiffs*

25