UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CENTRO DE LA COMUNIDAD HISPANA DE
LOCUST VALLEY; and THE WORKPLACE
PROJECT,

                                Plaintiffs,                           **REPORT AND**
                                                                        **RECOMMENDATION**
             -against-                                   CV 10-2262 (DRH)(AYS)

TOWN OF OYSTER BAY; Town Supervisor
of the Town of Oyster Bay,

                                Defendants.
-----------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This action was brought by two community-based organizations to challenge the constitutionality of an ordinance passed by the Defendant, Town of Oyster Bay (the "Town" or "Oyster Bay"). The ordinance at issue (the "Ordinance") sought to restrict day laborers from soliciting work on the streets of Oyster Bay. Plaintiffs attempted to negotiate a settlement with the Town before the case was commenced in 2010. When that attempt failed, this action was commenced. Plaintiff prevailed at the preliminary injunction phase and Defendant appealed. The Court of Appeals for the Second Circuit declined to vacate that injunction, but found that factual issues precluded a decision as to the constitutional issues raised. Approximately eight years of litigation later, including extensive discovery and dispositive motion practice, as well a further appeal to the Second Circuit, Plaintiffs have ultimately prevailed. In particular, the District Court held (and the Second Circuit agreed) that the Ordinance constituted an unlawful restriction of commercial speech in violation of the First Amendment. See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 118 (2d Cir. 2017), Docket Entry ("DE") [147].

Presently before this Court, on referral from the Honorable Denis R. Hurley for Report and Recommendation, is Plaintiffs' motion for attorney's fees and costs, pursuant to 42 U.S.C. § 1988.  In an application that already reflects a reduced fee based upon their exercise of billing judgment, Plaintiffs seek $1,482,248.00 in attorney's fees, and $26,080.00 in costs for more than 3,500 hours spent over the course of this hard-fought litigation.  Defendants oppose Plaintiffs' motion on the grounds that the time spent by Plaintiffs' counsel was excessive, billing entries are vague and duplicative, and the hourly rates requested are more than permitted in the Eastern District of New York.  While Plaintiffs' current fee application reflects voluntary exercises of billing judgment, reducing the amount sought from the hours actually spent, Defendants seek an across-the-board reduction of fifty percent of Plaintiffs' fee application.  For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in part and denied in part, such that Plaintiffs be awarded the full amount of attorney's fees requested but that their costs be reduced, as set forth herein.

<u>BACKGROUND</u>

I.    <u>The Underlying Litigation</u>

Familiarity with the precise facts and procedural background of the underlying action is presumed.  Briefly summarized, this is a civil rights case brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of a law aimed at restricting the ability of day laborers to solicit work on public streets.  (Compl., DE [1], ¶ 1.)  The case was commenced by two organizational plaintiffs: (1) Centro De la Comunidad Hispana de Locust Valley ("Centro"), a membership organization of day laborers and their families and (2) The Workplace Project (the "Project"), a group that includes Latino immigrant workers who live in Nassau County and the Town of Oyster Bay (collectively "Plaintiffs").  Representing day laborers, Plaintiffs sought injunctive

relief prohibiting enforcement of the Ordinance.  (Compl. ¶¶ 30-31.)  In particular, it was alleged that the Ordinance interfered with constitutionally protected speech related to employment and was enacted specifically "in response to and as a result of discriminatory community animus" toward day laborers.  (Id.)  The original Complaint herein alleged that the Ordinance violated the First Amendment as well as the Equal Protection Clause of the Constitution.  (Id. ¶¶ 65-66.)

Upon the 2010 commencement of the case, Plaintiffs sought, and were granted, immediate temporary injunctive relief.  (DE [3].)  On June 1, 2010, upon consent of the parties, the Court converted the temporary relief into a preliminary injunction (the "PI").  (Order Granting Preliminary Injunction of Hurley, J., dated June 1, 2010, DE [19].)  Defendants appealed the PI to the Court of Appeals for the Second Circuit.  In an effort to avoid a waste of resources, Plaintiffs sought, and were granted, a stay of discovery pending a decision by the appellate court.  (DE [22]; Order of Lindsay, M.J., dated June 14, 2010.)  The Second Circuit affirmed the District Court's entry of the PI, but retained jurisdiction to reconsider that order after any discovery the parties chose to take.  (DE [33].)  While the appellate court did not reach the merits of the dispute, it nonetheless left the preliminary injunctive relief in place.  (Id.)

On September 29, 2011, Plaintiffs filed an Amended Complaint, alleging that the Ordinance and enforcement thereof violated the First Amendment as well as the Equal Protection and Due Process Clauses of the Constitution.  (See generally Am. Compl., DE [40].)  In that pleading, Plaintiffs stated that since the passage of the Ordinance, the Town had begun to station law enforcement officers in areas where day laborers traditionally gather, and that these laborers were subject to harassment by the officers.  (Am. Compl. ¶¶ 53-63.)  The stay of discovery was lifted and the parties began to litigate.  That litigation involved extensive paper discovery as well as the taking of several depositions.  Discovery disputes arose as to, inter alia, the scope of

discovery and the permissibility of subpoenas.  These disputes were litigated aggressively by the parties, including appeals to the District Court.  (Mem. and Order of Hurley, J., dated June 18., 2013, DE [94].)  Also litigated were Defendants' dispositive motions to dismiss for lack of standing, and for partial summary judgment.  (DE [52], [77].)  Appeals of certain rulings of the then-assigned Magistrate Judge, as well as motions to dismiss and for summary judgment, were decided by the District Court in a decision dated June 18, 2013.  (DE [94].)

Discovery and related motion practice continued after the District Court's June 2013 decision, including a litigated motion to quash twenty-four third-party subpoenas.  This motion required briefing and consideration of whether the privacy rights alleged conferred standing sufficient to challenge the subpoenas at issue.  (DE [98-107].)  In 2014, pretrial discovery litigation continued, with counsel litigating extensions of discovery and the permissibility of witness testimony.  (DE [112], [115], [117].)

In 2014, after the close of discovery, Plaintiffs took the first step in moving for summary judgment.  (DE [123-131].)  By Memorandum and Order dated September 3, 2015, Judge Hurley granted summary judgment to Plaintiffs, holding that the Ordinance (which prohibited individuals from congregating on public roadways and soliciting the operators of motor vehicles for employment), violated Plaintiffs' First Amendment rights.  (Mem. and Order of Hurley, J., dated Sept. 3, 2015, DE [138].)  In so holding, Judge Hurley urged the parties to seek a "safe, constitutionally valid solution" to address Defendant's concerns.  (Id.)  Judgment was entered in favor of Plaintiffs on September 4, 2015.  (DE [139].)  The docket reveals no requests for assistance with settlement, and the litigation continued with Defendants appealing the judgment of the District Court.  On September 15, 2017, the Second Circuit affirmed Judge Hurley's decision.  (DE [147].)

II.    The Present Fee Application

As noted, Plaintiffs seeks a total of $1,482,248.00 in attorney's fees, and $26,080.00 in costs for more than 3,500 hours spent over the course of this eight-year litigation.  The Court notes that, as prevailing parties, Plaintiffs are entitled to seek recovery of fees representing hours worked during the litigation, as well as hours expended in connection with the preparation of this fee application, including reply papers.  See Weyant v. Okst, 198 F.3d 311, 316 (2d Cir.1999). However, in the exercise of billing judgment, Plaintiffs have waived their right to seek recovery of any fee representing hours worked in connection with preparation of their reply papers.  (DE [171-1].)  In addition, they have also significantly trimmed their fee application by asking for an award less than the amount reached by simply multiplying their hourly rates by the number of hours worked.  Instead, Plaintiffs seek a reduced award, reflecting their decision to forego payment for hours worked by law students and some junior lawyers and for travel time, as well as an across-the-board discount of all hours billed.  Nonetheless, as discussed below, Defendants oppose the application in its entirety.

DISCUSSION

I.    Legal Principles

42 U.S.C. § 1988 ("Section 1988") grants a court the discretion to allow a prevailing party a "reasonable attorney's fee" as part of the costs incurred in a civil action.  42 U.S.C. § 1988(b).  There is no question that Plaintiffs are prevailing parties within the meaning of Section 1988 and are thus entitled to a reasonable award.  The only issue before the Court is the amount of attorney's fees and costs to be awarded.

To determine a "reasonable" fee, a court must arrive at a reasonable hourly rate, which is then multiplied by the reasonable number of hours worked. This is sometimes referred to as the "lodestar" amount. Millea v. Metro–N. R.R. Co., 658 F.3d 154, 166-67 (2d Cir. 2011); Lilly v. City of New York, No. 16 Civ. 322, 2017 WL 3493249, at *2 (E.D.N.Y. Aug. 15, 2017). The lodestar amount can be adjusted as appropriate. Importantly, however, the lodestar fee is a presumptively reasonable fee that represents the starting point in fee calculation. See Millea, 658 F.3d at 166; National Envtl. Safety Co., Inc. v. Katz, No. 18-cv-2161, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019). The burden is on the party seeking an award of fees to "submit sufficient evidence to support the hours worked and the rates claimed." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

The District Court has broad discretion when awarding a reasonable fee. See Matusiak v. Erie County Water Auth., 757 F.3d 31, 64 (2d Cir. 2014). Notably, "[t]he standard of review of an award of attorney's fees is highly deferential to the district court." Carter v. City of New York, No. 18 Civ. 360, 2019 WL 1499190, at *2 (S.D.N.Y. April 5, 2019) (citing Mautner v. Hirsch, 32 F.3d 37, 38 (2d Cir. 1994)); see also Seigal v. Merrick, 619 F.2d 160, 161 (2d Cir. 1980). Ultimately, whatever the hourly rate requested, that rate must be supported by evidence. See Trustees v. Cali Enterprises, No. 18-CV-3556, 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019). Such evidence should demonstrate that the experience of counsel and results obtained in the past, including prior awards in similar cases, supports the requested rate. See Hugee, 852 F. Supp. 2d at 298. However, the court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). Accordingly, courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating

an attorney's time."  Id.  While such decisions will not be disturbed absent abuse, any decision reached must be properly explained and supported by the law as well as the facts and evidence in each particular case.  See id. at 838-39; see also Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 533 (2d Cir. 2018).

When reviewing fee applications, a court relies on its familiarity with the case, "as well as on its experience with the parties' evidentiary submissions and arguments."  Ruiz v. Maidenbaum & Assocs. P.L.L.C., No. 12 Civ. 5044, 2013 WL 3957742, at *4 (S.D.N.Y. Aug. 1, 2013) (citation omitted).  This Court was not responsible for handling the discovery phase or motion practice in this matter.  However, there was never a trial on the merits, and this Court's familiarity with the demands of litigating extensive pretrial and dispositive motion practice makes it well-positioned to review the merits of the present motion.

A.    Hourly Rate

Broadly speaking, when considering what is "reasonable," courts consider "the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2007).  As observed by the Second Circuit, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client . . . ."  Id. (emphasis added).  The rate to be set must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)) (insertion in original).

Generally, the "forum rule" requires the court to use "the hourly rates employed in the district in which the reviewing court sits."  Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 290 (2d Cir. 2011).  Under this rule, the court applies a presumption in favor of an award that reflects a prevailing district rate.  Simmons v. New York City Transit Authority, 575 F.3d 170 (2d Cir. 2009).  To overcome this presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  Id. at 175.  In addition to applying the hourly rates generally charged in the forum, the court must also consider:

- the complexity and difficulty of the case,

- the available expertise and capacity of the client's other counsel (if any),

- the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics),

- the timing demands of the case,

- whether an attorney might have interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself,

- whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and

- other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill, 522 F.3d at 184.

Many courts rely on an undisputed "forum rate" set forth by counsel to support a fee award.  When such hourly rates are proposed without quarrel, those rates are usually held to be reasonable, without discussion.  However, what may often be cited as the "forum rate" does not necessarily dictate the rate in all cases brought in a particular district.  Deciding the proper

hourly rate (even assuming that rate is the "in district" rate) is not a "one size fits all" determination. Instead, as the <u>Arbor Hill</u> factors demonstrate, the type of case, experience of counsel, and complexity of the matter may support an in-district rate that deviates from what is often cited as the appropriate "district rate."

A review of cases decided in the neighboring Eastern and Southern Districts of New York reveals that there is no real bright line between a reasonable Eastern District rate, and an equally reasonable Southern District rate. Indeed, judges in this District have long lamented the "artificiality" of a "rigid forum-based rule in the context of the Eastern District of New York and the Southern District of New York because they form a unitary market for legal services." <u>Luca v. County of Nassau</u>, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y.2010); <u>see also</u> <u>United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents</u>, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012).

Given the geographic proximity and overall quality of the bar, it is not surprising that there is substantial overlap between what courts consider to be the hourly "market rate" in the Southern and Eastern Districts of New York. To demonstrate, in <u>Lilly v. City of New York</u>, No. 16 Civ. 322, 2017 WL 3493249, at *1 (S.D.N.Y. Aug. 15, 2017), a District Judge in the Southern District of New York noted that "[p]recedent in the Southern District of New York demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to $650." <u>Id.</u> at *4 (citing <u>Abdell v. City of New York</u>, No. 05 Civ. 8453, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (listing cases)). While this range was referred to in 2017, it remains within the current range of hourly rates for a variety of litigators practicing in the Southern District. <u>See</u> <u>Trustees v. Clear It Out Contracting, LLC</u>, No. 19-CV-1188, 2019 WL 2171233, at *3 (S.D.N.Y. May 20, 2019) (awarding Southern District counsel hourly rate of $350 in 2019 in case brought to

confirm labor arbitration award and, relying on Eastern District precedent holding that courts "regularly approve" hourly rates in such cases "ranging from $200 to $450 per hour for partners and $100 to $300 per hour for associates"); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476, 2019 WL 384446, at *5-6 (S.D.N.Y. Jan. 31, 2019) (awarding Southern District counsel fees at $350 hourly rate in copyright infringement case), adopted by, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019); Carter, 2019 WL 1499190 at *3 (awarding $500 hourly fee in Southern District).

This range is similar to fees recently awarded in a variety of cases litigated in the Eastern District of New York. See e.g., Schwartz v. United States Drug Enforcement Administration, No. 13-CV-5004, 2019 WL 1299192, at *9 (E.D.N.Y. March 1, 2019) (awarding $500 hourly fee to partner litigating FOIA litigation, and listing awards of between $500 and $655 per hour for partners handling complex litigation), adopted by, 2019 WL 1299660 (E.D.N.Y. Mar. 21 2019); National Environmental, 2019 WL 1994049, at *2 (award based upon $500-$600 hourly rate to partners and $300 hourly rate for associates litigating breach of contract case); Quintanilla v. Good Eats Meal Plan Corp., No. 18-CV-4350, 2019 WL 1936731, at *2 (E.D.N.Y. May 1, 2019) (noting that courts generally award hourly rates ranging from $300-$400 for experienced attorneys litigating wage disputes); Cali Enterprises, 2019 WL 2076784, at *6 (noting propriety of award of between $200 and $325 per hour for junior associates litigating ERISA collection matter); Reiter v. Maxi-Aids, Inc., No. 14 CV 3712, 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019) (noting propriety of awarding up to $450 per hour for partners and up to $325 for associates in fee shifting cases); McLaughlin v. IDT Energy, No. 14 CV 4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity owners with more than fifteen years of experience, $450 for

partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience") (report and recommendation).

In accord with Arbor Hill, it is important to remember that while an attorney representing clients in the Southern District of New York may sometimes command a higher hourly fee than an attorney representing clients in the Eastern District of New York, a routine matter in the Southern District does not, and indeed should not, necessarily translate to a higher hourly fee award. Thus, even when an attorney routinely charges an hourly rate at the higher end of the spectrum, that attorney's work on a routine matter may not result in an award of fees that is in accord with counsel's stated "usual" hourly rate. See e.g., Lilly, 2017 WL 3493249, at *10 (noting that while experience of attorney may command an hourly rate of $600, handling a less complex matter of brief duration warranted award of a lower hourly rate of $450).

Moreover, an hourly fee awarded in the past need not be "frozen in time" as to require the same rate to apply over a period of several years. Luca, 698 F. Supp. 2d at 302 (awarding experienced civil rights counsel hourly rate of $400 in fee award litigated in 2010 and noting that "the current hourly rate cannot logically be frozen in time"); see also Almond v. P.J. Far Rockaway, Inc., No. 15-cv-6792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("[A]ttorney's fees, like other goods and services, increase in cost with inflation."); compare Carter, 2019 WL 1499190, at *3 with Lilly, 2017 WL 3493249, at *10 (awarding attorney $450 hourly fee in 2017, and awarding same attorney $500 hourly fee in 2019).

Importantly, the complexity of a matter will support an award at the high end of the district spectrum, whether that case is litigated in the Southern or Eastern Districts of New York. See Sixty-One Thousand Nine Hundred Dollars and No Cents, 856 F. Supp. 2d at 494 (awarding hourly rates of $600 for partner and $400 for associate in forfeiture matter). Thus, even cases litigated within the Eastern District may warrant an award based upon an hourly rate at the high end of the alleged Southern District rate of $600. See id. Such high rates of compensation are properly "reserved for expert trial attorneys with extensive experience before the federal bar," who are specialists "recognized by their peers as leaders and experts in their field." Martinez v. City of New York, 330 F.R.D. 60, 67 (E.D.N.Y. 2019) (quoting Hugee, 852 F. Supp. 2d at 300).

As the discussion above makes clear, courts in the Eastern and Southern Districts of New York hold a broad range of rates to be reasonable. While a review of cases reveals a somewhat lower rate structure is more commonly applied in the Eastern District of New York, the Eastern and Southern districts find common ground in determining hourly rates not only on the so-called (and admittedly broad) in-district rate, but also, in accord with Arbor Hill, on the experience of counsel as well as the complexity and duration of the case. Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate, while less complex matters, even if litigated by experienced counsel, support a lower rate. See In re Vitamin C Antitrust Litig., Nos. 06-MD-1738, 05-CV-453, 2013 WL 6858853, at *1 and n.1 (E.D.N.Y. Dec. 30, 2013) (rejecting attempt to "merge . . . all types of litigation in order to ascertain a single reasonable hourly rate"). This is the law whether the case is litigated in the Southern or Eastern District of New York. If highly experienced counsel can show the reasonableness of a fee that exceeds the rate often awarded within a district, courts should not shy away from making an award at the higher end of the spectrum. See e.g., McLaughlin, 2018

WL 3642627 at *17 (awarding $550 hourly rate in 2018 class action to counsel with 33 years of experience); Sixty-One Thousand Nine Hundred Dollars and No Cents, 856 F. Supp. 2d at 494; Luca, 698 F. Supp. 2d at 300.

B.      Hours Billed

Like the hourly rate, the burden of establishing the reasonableness of the number of hours expended lies with the moving party.  See Custodio v. American Chain Link & Const., Inc., No. 08 Civ. 7148, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)) (additional citations omitted).  The party seeking fees must "provide accurate, detailed and contemporaneous time records."  Remache v. Mac Hudson Group, No. 14 CV 3118, 2018 WL 4573072, at *19 (E.D.N.Y. Sept. 7, 2018), adopted by, 2018 WL 4568860, at *1 (E.D.N.Y. Sept. 24, 2018); see also Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done").

Where hours are not properly documented, the court may reduce the fee "accordingly." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  Fee applications must be reviewed so that "[h]ours that are 'excessive, redundant, or otherwise unnecessary,'" are excluded.  Id. at 434. Also relevant is the number of attorneys assigned to staff particular matters or events, such as appearances, oral arguments or depositions.  Thus, a district court can reduce the requested award "where the prevailing party assigned an inordinate number of attorneys to litigate the action."  Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (holding, in a Title VII case, that "it was within the purview of the court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable").  Indeed, overstaffing of a matter

constitutes a valid reason to object to hours billed and for the court to reduce a request. See Lochren v. County of Suffolk, 344 F. App'x. 706, 709 (2d Cir. 2009) (affirming 25% reduction in hours billed "because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel").

In addition to overstaffing, fee applications are often attacked on the ground that attorney time records reveal impermissible "block billing," i.e., billing large numbers of hours to vaguely described multiple tasks. Block billing is not per se unreasonable. See Bedasie v. Mr. Z Towing, Inc., No. 13 CV 5453, 2017 WL 5664848, at *9 (E.D.N.Y. Nov. 27, 2017). However, such billing is objectionable when the "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities." Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 313-14 (S.D.N.Y. 2009) (citations omitted).

While Courts must make case-specific findings as to fee awards, across-the-board percentage reductions may be applied, and are routinely upheld as reasonable. Such reductions have long been recognized as a "practical means of trimming fat from a fee application." Kirsch, 148 F.3d at 173 (citation omitted); see also Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). Such across-the-board reductions may reflect the reviewing court's decision that billing records were not sufficiently detailed, contain inappropriate block billing, and/or that matters were overstaffed. Courts have been held to have properly applied across-the-board reductions ranging generally from 15% to 50%. See e.g., Matusick v. Erie County Water Authority, 757 F.3d 31, 64 (2d Cir. 2014) (upholding 50% reduction in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews"); Francois v. Mazer, 523 F. App'x. 28, 29 (2d Cir. 2013)

(upholding 40% reduction in hours); Green v. City of New York, 403 F. App'x. 626, 630 (2d Cir. 2010) (upholding 15% reduction); Miroglio, 629 F. Supp. 2d at (applying 15% reduction for time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents).

With these standards in mind, the Court turns to review the present fee application.

II.     The Present Application: Hourly Rate Requested and Hours Billed

    A.     Hourly Rates Requested

Plaintiffs have submitted a highly detailed request for fees, including well-supported requests as to hourly rates. The rates requested vary depending upon the experience of the attorney performing the work. Here, the Plaintiff organizations were represented by two separate entities. Seven attorneys are identified as having worked, at one time or another, for LatinoJustice PRLDEF ("LatinoJustice"). Four worked for the New York Civil Liberties Union (the "NYCLU").

The LatinoJustice team included attorneys Alan Levine ("Levine"), Jackson Chin ("Chin"), Elizabeth Joynes ("Joynes"), Laura Huizar ("Huizar"), Bianca Scott ("Scott"), Kyle Valenti ("Valenti"), and Alba Villa ("Villa"). Attorney Levine, a 1962 law school graduate with extensive experience litigating civil rights cases, seeks an hourly fee of $600. Attorney Chin, also a highly experienced civil rights litigator, who graduated law school in 1984, seeks an hourly rate of $475. Joynes, a 2010 graduate, seeks an hourly rate of $350. Attorney Huizar seeks to have her hours calculated at the rate of $300. Any hours incurred by Huizar prior to her law school graduation are accounted for at an hourly rate of $150. Similarly, hourly rates for more recent law graduates Valenti and Villa are calculated at the hourly rate of $150.

Plaintiffs support their hourly fee structure with documents showing the experience of each attorney and, where applicable, the hourly rates these attorneys have been awarded in prior litigation. For ease of reference the Court annexes hereto Appendix A, a table listing each attorney for whom fees are sought, the year in which they graduated law school, the hourly rates sought herein and, if submitted and therefore before this Court, hourly rates awarded to these attorneys in other litigations. The curriculum vitae of attorney Levine is submitted as part of his declaration in support of Plaintiffs' fee application. (Declaration of Alan Levine ("Levine Decl."), Ex. A, DE [162-3].) Those of attorneys Chin, Joynes, Huizar, and Scott are described in general and have been submitted to this Court as Exhibits 2-5 of the Declaration of Jackson Chin in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Chin Decl."). (DE [163-1], [164-1], [165-1], [166-1].)

There were four NYCLU attorneys who worked on this case. Attorney Arthur Eisenberg ("Eisenberg"), a 1968 law graduate with extensive civil rights litigation experience, seeks the same hourly rate as the senior attorney at LatinoJustice. Thus, he seeks to have his fee calculated at the hourly rate of $600. (Declaration of Arthur Eisenberg ("Eisenberg Decl."), DE [162-4].) Corey Stoughton ("Stoughton"), a similarly experienced litigator who graduated law school in 2002, seeks to have her hours calculated at the hourly rate of $400. (Id.) Mariko Hirose ("Hirose"), a 2008 graduate, also seeks compensation at the hourly rate of $400. (Id.) The most junior NYCLU litigator, attorney Jordan Wells ("Wells"), a 2013 law school graduate, seeks to have his time calculated at an hourly rate of $300. (Id.) Finally, Plaintiffs seek an hourly award set at the rate of $500 for attorney Leon Friedman ("Friedman"). (Decl. of Leon Friedman ("Friedman Decl."), DE [172-1].) Friedman is the attorney who prepared the fee petition presently before the Court. He has extensive experience in civil rights litigation and has

prepared numerous other petitions in this District.  He graduated law school in 1960, and currently serves as a professor at the Maurice A. Deane School of Law at Hofstra University. (Id.)

      B.    <u>Number of Hours</u>

Plaintiffs have produced highly detailed contemporaneous time records supporting the hours they worked and describing the type of work performed.  As to the NYCLU, Plaintiffs have submitted the contemporaneous time records of Stoughton, Hirose and Wells, as entered into a computer program for recording billable time.  Eisenberg recorded his time in a daily written diary that was than transposed by a staff assistant into the same computer application. (Eisenberg Decl. ¶ 14.)  Each time entry submitted by the NYCLU attorneys reflects the date, tasks performed, and the amount of time spent on each task.  (Eisenberg Decl., Exhs. E-H.)  In addition to requesting hourly fees, the NYCLU seeks reimbursement of expenses in the amount of $485.  Records regarding those expenses are annexed as Exhibit I to Eisenberg's Declaration. The records submitted by LatinoJustice similarly reflect the date of tasks, as well as a description of each, and the time spent.  (Chin Decl., Exhs. 2-5.)

As noted above and revealed by their submission, Plaintiffs do not seek the full lodestar amount, <u>i.e.</u>, the hourly rates requested multiplied by the number of hours reflected in their records.  Instead, as part of this application, they have already exercised billing judgment.  Thus, their application reflects several voluntary deductions.  In particular, LatinoJustice does not seek compensation for the more than 1,000 hours billed by Villa and Valenti – the two most junior lawyers.  While assistance and support was provided to both LatinoJustice and the NYCLU by law students, no compensation is sought for this work.  Plaintiffs' fee application also seeks no fees for paralegals or staff lawyers who worked in connection with this litigation.  (Eisenberg

Decl. ¶ 15.)  Additionally, LatinoJustice attorneys Levine, Huizar and Joynes have deducted travel time in the respective amounts of 39, 32.4 and 90.2 hours.  Attorney Chin has also deducted 82.5 hours of time from his fee request.  These deductions reduce the LatinoJustice $1,644,950 lodestar amount (which does not include any request for law student time) to $1,387,020.  LatinoJustice has further exercised billing judgment and made an across-the-board 10% reduction in fees.  This billing judgment is aimed at reflecting the possibility of overstaffing at depositions and court conferences, where the presence of more than one or two lawyers might be deemed excessive.

NYCLU attorneys spent substantially less time on this litigation, as reflected in their billing records.  The NYCLU total lodestar fee is $234,700.  Like LatinoJustice, NYCLU has exercised its billing judgment.  Thus, its application applies a voluntary 10% across-the-board reduction.  It also seeks no compensation for the assistance of paralegals or law students. (Eisenberg Decl. ¶ 15.)  Nor has the NYCLU included hours spent on preparation of the fee application.  (Id.)  As a result of the foregoing deductions, the NYCLU has reduced its fee request from the lodestar amount of $234,700 to $211,230.  Friedman, the attorney who prepared the present fee application, discounted approximately five hours of his time spent preparing the within motion and does not seek any fees associated with the preparation of the reply papers.  He seeks a total award of $22,700.  (Friedman Decl. ¶ 5; Letter of Friedman, L. dated Oct. 29. 2018, DE [170-1].)

In sum, the total amount sought by Plaintiffs, taking into account their voluntary write-offs of junior attorneys, law students and paralegal assistance, as well as an across-the-board 10% reduction, compared to their lodestar calculations is as follows:

- LatinoJustice        $1,248,310    (compared to lodestar of $1,644,950)

- NYCLU            $ 211,230    (compared to lodestar of $234,700)

- Leon Friedman      $ 22,700    (full lodestar amount)

  **TOTAL:**            **$1,482,248**    **(compared to total lodestar of $1,902,350)**

III.    Disposition of the Motion

     A.     Hourly Rates

To establish the propriety of the hourly rates sought (which range from $150 to $600), Plaintiffs analogize the positions held by their public interest lawyers to attorneys working at large litigation firms. Thus, it is argued, and the Court agrees, that if they held private sector positions, attorneys Levine, Chin, Eisenberg and Friedman (whose hourly rate requests range from $475 to $600) would be senior litigation partners. Attorneys Stoughton, Hirose, Joynes and Huizar (whose hourly rate requests range from $300 to $400), would either be junior partners or senior associates. Attorneys Valenti, Villa and Wells would be junior associates. While no fees are sought for the work of Valenti or Villa, Plaintiffs seek to have Wells' time calculated at an hourly rate of $300. When analogized to private sector attorneys with similar experience, all of the hourly rates are reasonable. Indeed, when viewed through the billing lenses of private sector litigation firms, the fees requested are reasonable and, indeed, compared with many large firms, are no doubt modest. See Schwartz, 2019 WL 1299192, at *7 (noting usual hourly billing rate for partner at large litigation firm as between $725 and $950 for years 2014-2018).

The fact that the fees sought are less than those charged by large litigation firms does not mean that Plaintiffs are entitled to the rate requested. Instead, the Court must determine whether the rates are reasonable in the context of this particular fee-shifting litigation. As the cases discussed above indicate, Defendant cannot reasonably attack the vast majority of the hourly

rates sought – between $150 and $475.  Those rates are well within Eastern and Southern District case law going back as far as 2014.  Indeed, in light of the experience of Plaintiffs' attorneys, those rates fall squarely in the middle ground of fees awarded in both the Southern and Eastern Districts of New York.  This Court therefore holds that the hourly rates for attorneys Chin, Stoughton, Hirose, Joynes and Huizar are undoubtedly reasonable 2019 Eastern and Southern District rates.

In likely recognition of this fact, Defendants' argument as to hourly rates is aimed chiefly at the $500 rate sought by attorney Friedman, and the $600 hourly rate sought for attorneys Levine and Eisenberg.  Defendant argues that those rates are simply beyond those awarded in the Eastern District of New York, and that Plaintiffs cannot justify their choice to hire attorneys who bill their time at Southern District rates.  In response, Plaintiffs argue that the rates are consistent with the high end of awards in this District.  They also argue, in the alternative, that the Court should look to the hourly rates awarded in the Southern District of New York.  With respect to the latter argument, Plaintiffs argue that this is an exceptional case in which they could not have found competent counsel willing to take on a municipality located within this District.  Plaintiffs properly note that there is, as discussed above, a presumption that an "in-district" rate applies to fee applications, and that in exceptional circumstances, an out-of-district rate may apply.  An out-of-district rate may be appropriate in the exceptional case where a plaintiff can show that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  Simmons, 575 F.3d at 173. Such an application should be supported by a showing that locally available counsel with the required experience were either unwilling or unable to handle the case.

As to the argument that competent counsel could not have been found within the Eastern District bar, the Court disagrees.  This Court is certainly familiar with experienced Eastern District civil rights litigators who would be able to (and indeed have) litigated claims similar to the Constitutional claims raised here.  Thus, the Court cannot accept the unsupported argument that Plaintiffs "were justified in crossing the East River bridges to obtain the proper counsel." (Pl. Mem. of Law 17.)  Nor does the Court agree that it is "difficult to believe that any small office in the Eastern District could have come forward" or that "any larger law office with sufficient personnel would have the inclination to take the case against an important municipal government." (Id.)  Thus, the Court rejects the argument (advanced by a Professor who teaches, inter alia, at a law school based on Long Island) that groups such as Plaintiffs would not be able to find any Long Island law firm willing to take on their case.  The Court also rejects the notion that Long Island law firms would be wary of suing, and possibly incurring the wrath, of a local municipality.  The short answer to this argument is that a review of the Long Island courthouse docket would undoubtedly reveal that lawsuits naming municipalities are routinely commenced by Long Island-based law firms.[1]

In any event, this Court need not make a finding as to the necessity of hiring Southern District attorneys, because this Court holds that all of the hourly fees requested, including the $500 rate sought by attorney Friedman and the $600 hourly rate of attorneys Levine and Eisenberg, are appropriate to award in this matter in this forum.  The fees of these attorneys are well-supported by their experience and by caselaw focusing on the experience of counsel and the

---

[1]    While not necessary to its holding, the Court accepts Plaintiffs' representation that the Long Island chapter of the ACLU does not handle litigation.  It was thus arguably proper and necessary to seek the assistance of the chapter located within the Southern District of New York. The Court addresses, infra, the issue of whether it was appropriate for Plaintiffs to be represented by two separate organizations, or whether such staffing was excessive.

nature of the litigation when deciding to award fees at a higher hourly rate. In short, the attorneys seeking fees at the higher rate of the spectrum, particularly those who seek an hourly award of $600, are leaders in their field whose efforts should be properly compensated.

As noted, Levine is a 1962 graduate of Yale Law School. (Levine Decl., Ex. A.) He has actively litigated civil rights cases, while also teaching law at various law schools, throughout his more than fifty-year career and, in particular, with LatinoJustice since 1997. (Levine Decl. ¶ 24, and Ex. A.) His experience includes arguing cases before the United States Supreme Court, including the only case in which the Supreme Court considered the constitutionality of removing books from a school library because of their controversial points of view. (Levine Decl. ¶ 26.) Of particular relevance to this action, Levine has litigated three other cases against local governments that sought to limit the ability of day laborers to solicit employment within their jurisdictions. (Id. ¶ 27.) In the past, Levine has been awarded fees at the hourly rate requested here. See, e.g., Abdell v. City of New York, No. 05-CV-8453, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (awarding Levine an hourly rate of $600). DE [162-2].

NYCLU attorney Eisenberg is similarly uniquely qualified, and his submission likewise demonstrates his entitlement to a $600 hourly rate. Eisenberg is a 1968 graduate of Cornell University School of Law. (Eisenberg Decl., Ex. A.) Like Levine, he is an experienced civil rights litigator and law school professor. Eisenberg began his civil rights work as a staff lawyer with the NYCLU in 1971 and has served as its Legal Director since 1989. (Eisenberg Decl. ¶ 11.) He has authored six books and eight articles and essays on various aspects of Constitutional Law, as well as a broad selection of lectures and conference presentations. (Eisenberg Decl., Ex. A.) He has also participated in First Amendment cases before numerous federal courts, including this Court and the Supreme Court of the United States. (Id.)

Friedman is also well experienced in his field and is certainly entitled to the $500 hourly fee sought. After graduating Harvard Law School in 1960, Friedman entered private practice for a number of years before becoming a staff attorney for the American Civil Liberties Union. (Friedman Decl. ¶ 6.) He has been a federal litigator for fifty-eight years, arguing more than fifty cases in Courts of Appeal across the country and authoring briefs in numerous Supreme Court cases, while also authoring a number of books and articles on civil rights litigation and lecturing on the subject as well. (Id. ¶¶ 9-10.) Friedman is also the Joseph Kushner Distinguished Professor of Civil Liberties at Hofstra Law School and has taught law for the past forty-five years, focusing on constitutional law, copyright law, and civil rights litigation. (Id. ¶ 6.) He has previously been awarded hourly rates at or near the rate sought here in prior Eastern District cases. See, e.g., Restivo v. Nassau County, No. 06-CV-6720, 2017 WL 3727366, at *3 (E.D.NY. Aug. 28, 2017) (awarding Friedman $500 per hour); United States v. City of New York, No. 07-CV-2067, 2013 WL 5542459, at *8 (E.D.N.Y. Aug. 30, 2013) (awarding Friedman an hourly rate of $450).

The court is aware that the hourly rates awarded to Levine and Eisenberg are certainly at the high end of the Eastern District spectrum, and recognizes that such an award is properly reserved only for the most experienced litigators in a particular field. The Court holds, however, that the $600 hourly rate for these attorneys is supported by their experience, and the length and complexity of this case. Arbor Hill dictates that courts consider "the rate a paying client would be willing to pay" and that "a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Here, while the hourly rate is high, reasonable clients seeking the best representation in a hotly litigated constitutional case would find their money well spent

in hiring the lawyers chosen by Plaintiffs here.  Each hourly fee is well justified within the Eastern District of New York.

For the foregoing reasons, the Court holds that the hourly rates requested are within the appropriate range of fees that may be awarded in the Eastern District of New York.  The Court therefore recommends that Plaintiffs' attorney's fees be calculated at the rates requested.

B.      Number of Hours Worked

In addition to arguing against the hourly rates requested by Plaintiffs' counsel, Defendants argue that the records submitted do not contain the required detail.  Defendants characterize the records as "impermissibly vague, often indecipherable, reliant on block billing, and replete with administrative tasks and excessive, duplicative entries."  (Def. Mem. of Law in Opp'n, DE [168], 3.)  Defendants question not only the number of attorneys who worked on this litigation, but the particular tasks alleged to have been performed by each.  In addition to questioning the staffing of the matter by LatinoJustice, Defendants state that it was not necessary for Plaintiffs to enlist the help of two separate civil rights organizations, instead of only one. Finally, Defendants argue that the complexity of the case is overstated by Plaintiffs and that, in truth, this was actually a very simple legal matter.

First, as to the issue of whether it was necessary for two separate civil rights organizations to represent them, the Court holds that Plaintiffs have explained, and properly supported, their decision to be represented by two separate organizations, i.e., LatinoJustice and, in a much more limited capacity, the NYCLU.  The NYCLU seeks limited fees in connection with this litigation, and the lion's share of the work was performed by attorneys working for LatinoJustice.  When comparing the work done and time expended, the Court does not agree that it was excessive to have two legal assistance organizations litigate on behalf of Plaintiffs.

As to the sufficiency of the billing records, the Court finds that Plaintiffs' application properly supports the hours spent on the tasks for which compensation is sought.  The records submitted properly detail the hours spent and tasks performed by each attorney.  For example, Levine's declaration in support of his fee application details his role as lead counsel in this case since its 2010 inception.  (Levine Decl. ¶¶ 3-22.)  Chin's declaration does the same, beginning with his entrance into the case in 2014, and details with specificity the work performed by Joynes, Huizar, Scott, Valenti and Villa.  (Chin Decl. ¶¶ 6-21.)  Individual billing records for each of the LatinoJustice attorneys are annexed to Chin's declaration at Exhibits 2-5.

Additionally, this is not a case where an inordinate number of attorneys appeared at depositions and court conferences.  Thus, this case is readily distinguishable from those where, for example, multiple attorneys sought to bill their time for attendance at a deposition.  E.g., LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 524-25 (S.D.N.Y. 2010) (reducing fees for overstaffing, including three or more attorneys attending depositions).  While it is certainly true that a single attorney can conduct a deposition, it is neither excessive nor out of the ordinary to have two attorneys (typically one senior and one junior) attend a deposition.  It is often the case that the presence of a second attorney facilitates the swift flow of a deposition by helping to prepare and provide exhibits.  In any event, not only does this Court hold that the number of attorneys representing Plaintiffs was appropriate, but also to the extent any such attendance might be deemed excessive, Plaintiffs have already accounted for this possibility by voluntarily reducing the hours billed and applying an across-the-board 10% reduction to the properly supported lodestar amount.

This Court also rejects Defendants' argument that Plaintiffs' fee application should be reduced for block billing.  The Second Circuit has described block billing as "the grouping of

multiple tasks into a single billing entry." Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir.

2015). As stated above, block billing is "not per se unreasonable." Id. (citing Merck Eprova AG

v. Gnosis S.p.A., 760 F.3d 247, 266 (2d Cir. 2014)). "While block-billing is disfavored and may

lack the specificity for an award of attorneys' fees, it is not prohibited as long as the court can

determine the reasonableness of the work performed." Adorno v. Port Auth. of N.Y. & N.J., 685

F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (quoting Mugavero v. Arms Acres, Inc., No. 03 Civ. 5724,

2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010)). Having reviewed the time records submitted

by Plaintiffs' counsel, this Court finds that they provide sufficient detail to determine the

reasonableness of the work performed. Accordingly, the Court finds no basis for reducing

Plaintiffs' fee application on the grounds of block billing.

Additionally, the Court rejects Defendants' arguments that Plaintiffs' attorneys spent an

excessive amount of time on particular tasks. As stated above, the hours detailed in Plaintiffs'

counsel's billing records are reasonable given the protracted nature of this litigation. Moreover,

Defendants attempt to persuade the Court that Plaintiffs' counsel's time was excessive because

Defendants' counsel spent less time and billed less to their client. As reflected by this report and

recommendation, this Court finds that Plaintiffs' counsel achieved excellent results on behalf of

their clients, especially in light of how vigorously this action was fought by Defendants.

Accordingly, this Court declines to find that any of the tasks performed by Plaintiffs' counsel

"should have" taken less time than the amount billed.

 Finally, as to whether the complexity of the litigation justifies the fees sought,

Defendants state that this case "established no new principle of law and concerned instead a

straightforward application of existing law." (Def. Mem. of Law 3.) This argument rings

particularly hollow in a case that was fought tooth and nail for eight years. Moreover, as

explained in Plaintiffs' submission, this case addressed difficult issues of standing, commercial speech, due process vagueness, equal protection, equitable relief and damages.  (Levine Decl. ¶ 7.)  A temporary restraining order and preliminary injunction were obtained, which Plaintiffs then had to defend the issuance of before the Second Circuit when Defendants appealed.  (Id. ¶ 8.)  When the Second Circuit declined to vacate the preliminary injunction, what began as a constitutional attack on the Ordinance transformed into a "seven-plus year fact-intensive litigation that defendants fought relentlessly at every stage."  (Id. ¶¶ 9-10.)

If Defendants truly believed that this matter was simple, they could have easily taken Judge Hurley's 2015 advice and attempted to work out a "safe, constitutionally valid solution" to address Defendants' concerns as to the alleged impact of the day laborer community.  No such solution was reached and the litigation continued for the next several years – with fees continuing to amass on both sides.  This Court emphasizes that Defendants were certainly not required to change their legal position, and had the right to litigate this case as they did.  They were aware, however, that this is a case where a fee might have been awarded.  The decision to continue to litigate was a business decision that Defendants had the right to make.  Having made that decision, they cannot now characterize this as a simple matter for which Plaintiffs' counsel over-billed.

Accordingly, this Court finds the hours billed by Plaintiffs' counsel reasonable and recommends that Plaintiffs be awarded the full amount of attorney's fees sought - $1,482,248.00.

C.    Costs

Plaintiffs also seek a total of $26,080.00 in costs and disbursements in connection with the instant action.  These costs include shipping charges, postage, transcript fees, conference calls, service fees, expert expenses, attorney meals, and various travel-related expenses incurred

by the attorneys representing Plaintiffs.  Defendants challenge the costs sought for meals and travel but otherwise do not object to Plaintiffs' application for costs.  (Def. Mem. of Law in Opp'n 16.)

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested."  Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)).  While Plaintiffs have not submitted receipts for the costs sought – which Defendants point out in their opposition – they documented the costs in detailed ledger reports, (Chin Decl., Ex. 6; Eisenberg Decl., Ex. I), that "indicate[] the date, description, and amount of each requested cost."  Schwartz, 2019 WL 1299192, at *11.  This Court finds such documentation to be adequate.

With respect to the costs sought by Plaintiffs, however, several of the categories of expenses are simply not compensable.  "An award of costs under Section 1983 is generally limited to '[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs . . . and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate.'"  Houston v. Cotter, 234 F. Supp. 3d 392, 412 (E.D.N.Y. 2017) (quoting Kuczma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987)) (alteration in original).  "Court filing fees, process servers, postage, . . . [and] transcripts" are also generally recoverable.  Hanover Ins. Co. v. D'Angelo, No. CV 13-4301, 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) (citation omitted).

"Generally, meals that are not required by out of town travel are not compensable." C.D. v. Minisink Valley Cent. Sch. Dist., No. 17 Civ. 7632, 2018 WL 3769972, at *13 (S.D.N.Y. Aug. 9, 2018) (citing L.V., 700 F. Supp. 2d at 528; see also Alcea v. City of New York, 272 F. Supp. 3d 603, 613 (S.D.N.Y. 2017) (noting that meals are "generally not recoverable"). Here, Plaintiffs seek $667.00 in expenses for "business meals," none of which were incurred in connection with out of town travel. Accordingly, this Court finds such expenses nonrecoverable and recommends they be denied.

In addition, Plaintiffs seek $1,855.00 in various travel-related and rental car expenses incurred by their attorneys when traveling from their offices in New York City to Long Island. (Chin Decl., Ex. 6; Eisenberg Decl., Ex. I.) While "local transportation" costs may "ordinarily be recovered as part of a fee award," Westport Ins. Corp. v. Hamilton Wharton Grp., Inc., 483 F. App'x 599, 605 (2d Cir. 2012), "[t]ravel costs may be denied where a party chooses out-of-district attorneys," as Plaintiffs did here. Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, 188 F. Supp. 3d 333, 345 (S.D.N.Y. 2016) (quoting Pall Corp. v. 3M Purification, Inc., No. 03-CV-92, 2012 WL 1979297, at *8 (E.D.N.Y. June 1, 2012)) (alteration in original). "[T]he Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms.'" Congregation Rabbinical Coll., 188 F. Supp. 3d at 345 (quoting Simmons, 575 F.3d at 175) (additional citations omitted). As detailed above in connection with Plaintiffs' counsel's hourly rates, this Court finds that numerous Eastern District litigators could have handled this case on behalf of Plaintiffs. Accordingly, since out-of-district counsel was not necessary in this action, Plaintiffs' should not be awarded costs with respect to their attorneys' travel from their offices in New York City to Long Island, where the Court,

Defendants and the site of the underlying action are all located.  See Congregation Rabbinical Coll., 188 F. Supp. 3d at 345 ("There is no reason why Defendants should incur greater liability simply because Plaintiffs retained out-of-district attorneys.").

Based on the foregoing, this Court recommends that Plaintiffs' request for costs be reduced by $2,522.00 to account for the nonrecoverable categories of travel and meals.  Taking into account these deductions, the Court recommends that Plaintiffs be awarded $23,558.00 in costs.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion for attorney's fees and costs, appearing at Docket Entry [162], be granted in part and denied in part.  Specifically, the Court recommends that Plaintiffs be awarded $1,482,248.00 in attorney's fees and $23,558.00 in costs, for a total monetary award of $1,505,806.00.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


**SO ORDERED:**

Dated: Central Islip, New York
       June 18, 2019                              /s/        Anne. Y. Shields
                                                  ANNE Y. SHIELDS
                                                  United States Magistrate Judge

Exhibit A

| Name | Law School Graduation Year | Rate Requested | Prior Rates Awarded |
|---|---|---|---|
| **Latino Justice** | | | |
| Alan Levine | 1962 | $600/hour | $600/hour |
| Jackson Chin | 1984 | $475/hour | $400/hour |
| Elizabeth Joynes | 2010 | $350/hour | |
| Laura Huizar | 2012 | Pre-bar: $150/hour Post-bar: $300/hour | |
| Bianca Scott | 2015 | $150/hour | |
| Kyle Valenti | 2013 | $150/hour | |
| Alba Villa | 2011 | $150/hour | |
| | | | |
| **NYCLU** | | | |
| Arthur Eisenberg | 1968 | $600/hour | |
| Corey Stoughton | 2002 | $400/hour | |
| Mariko Hirose | 2008 | $400/hour | |
| Jordan Wells | 2013 | $300/hour | |
| | | | |
| Leon Friedman | 1960 | $500/hour | $500/hour |